RAYTHEON MANUFACTURING COMPANY *vs.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

Middlesex. February 7, 1956. — March 28, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Practice, Civil,* Correction of error, Requests, rulings and instructions, Findings by judge. *Law of the Case. Insurance,* "Other insurance."

A judge who makes rulings of law at the close of the hearing of an action without jury is not irrevocably bound by them but may change them down to the time of his final decision of the action. [749]

The remedy for an inconsistency between a finding and a ruling of law made in an action heard by a judge without jury is a motion to correct the inconsistency or a motion for a new trial. [749]

Where, in an action on an insurance policy, the coverage of the plaintiff's loss by the policy was left conjectural and there was a finding for the defendant, the question whether a policy issued by another insurer was "other insurance" within a clause in the policy in suit governing the proportion of the loss for which the defendant should be liable in case the plaintiff carried "other insurance covering such loss . . . as is covered by this policy" became immaterial. [750]

CONTRACT. Writ in the Superior Court dated September 20, 1949.

The action was heard by *Forte, J.*

*Alfred Sigel,* for the plaintiff.

*Samuel P. Sears, (Lawrence R. Cohen* with him,) for the defendant.

SPALDING, J.   The plaintiff brings this action of contract upon a policy of burglary insurance issued by the defendant to the plaintiff.   The case was tried to a judge of the Superior Court who made detailed findings of fact and found for the defendant.   The case comes here on the plaintiff's exceptions.

Findings of the judge include the following: On March 31, 1947, the defendant issued to the plaintiff a policy of insurance covering all loss of merchandise, from within the premises, by "burglary, robbery, theft or larceny or attempt thereof" to the extent of $300,000.   On September 27, 1947, while this policy was in force, the plaintiff had approximately seven hundred thousand radio tubes stored in cartons in a third floor room in a building occupied by it at Bridge Street, Watertown.   There was a door in the middle of one wall and there were windows on the opposite wall.   The tubes were stored on both sides of the room which was divided by an aisle running from the door to the opposite wall. Each carton contained two hundred tubes and weighed about eight pounds.   The cartons were stacked in double rows running perpendicular to the aisle and parallel to the walls on which the door and the windows were located. The windows were five feet high and three feet wide.   Each window was barred with four wooden slats, nailed from top to bottom on the inside of the windows.

About 2:45 P.M. on September 27, 1947, an unknown person or persons gained entrance to the above described room by forcing in the slats on one of the windows.   Shortly thereafter employees of the plaintiff went to the room and found that the side where the window was located was a shambles.   Almost no box was left on top of another box. Every double row of boxes had been broken from end to end. The boxes appeared to have been tossed about.   Approximately thirty-five hundred cartons had been disarranged on one side of the room.   Shortly after the damage was dis-

covered three cartons of tubes were found on the ground near a tree which was located close to one end of the building.

Inasmuch as paragraphs 11 to 14, inclusive, of the findings are the subject of an exception, we shall set them forth in their entirety: "11. From the physical appearance of the room immediately after the departure of the intruders, the court finds that many of the boxes were deliberately pushed over and tossed about by the said intruders. 12. It is impossible for the court to determine how many cartons were damaged as a result of the force used to gain entrance to the room, how many were damaged while committing or attempting to commit a burglary, robbery, theft or larceny, or how many were damaged as a result of the intruders deliberately pushing them over or throwing them about without in any way attempting to accomplish any of said crimes. 13. The court finds that many of the boxes were tossed about and the tubes in said boxes damaged by persons of malicious intent, and not as a result of persons attempting a theft. 14. The amount of damage sustained by the plaintiff resulting from theft, or attempted theft, is purely conjectural."

After further findings to the effect that the damage to the merchandise amounted to $20,297.64 and that all formal requirements of the policy had been satisfied by the plaintiff, the judge found for the defendant.

At the close of the hearing both sides presented requests for rulings and the judge ruled on most of them. Six weeks later he handed down his findings. The principal contention of the plaintiff, as we understand it, is that certain of its requests, which were granted, became the law of the case, and that the subsequent finding for the defendant was inconsistent with these requests. Request numbered 1 was that "under the terms of the insurance policy issued by the defendant to the plaintiff . . . the defendant . . . is liable for all damages to the merchandise in the building caused by the forcible entry and the larceny." The second request read: "The damages sustained by the plaintiff were the result of the unlawful breaking into the building with the

theft or the attempt thereof and such losses sustained by the plaintiff are covered by the provisions of the defendant's policy of insurance issued to the plaintiff." The fourth request was that "The losses ultimately sustained by the plaintiff through a chain of circumstances set in motion by the theft or attempt thereof is covered by the provisions of the defendant's policy . . . ."

Doubtless when the judge granted these requests he was of opinion that the plaintiff had brought itself within the terms of the policy and was entitled to prevail. But it is obvious that when he came to decide the case six weeks later his view had changed. He was not irrevocably bound by his earlier ruling and was at liberty to rule or find differently down to the time of his final decision. "'[T]he phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Gleason* v. *Hardware Mutual Casualty Co.* 331 Mass. 703, 710. If the subsequent action of the judge created an inconsistency — and we think it did — the plaintiff was entitled to have it corrected. That might result in the happening of one of two things. The judge might correct his rulings to conform to his findings, or he might change his findings to conform to his rulings. Unless such correction was made a party would not know with any certainty what principles of law were being applied, and until he knew he could not properly save his rights. In such situations the law affords a remedy. It has been settled by numerous decisions that where there is an inconsistency between a ruling and a finding the remedy is either a motion to correct the inconsistency or a motion for a new trial. *DiLorenzo* v. *Atlantic National Bank*, 278 Mass. 321, 323–324. *National Shawmut Bank* v. *Johnson*, 317 Mass. 485, 492. *Biggs* v. *Densmore*, 323 Mass. 106, 108–109. *Kelsey* v. *Hampton Court Hotel Co.* 327 Mass. 150, 153. *Vieira* v. *Balsamo*, 328 Mass. 37, 39. Since the plaintiff pursued neither course, the question of inconsistency is not presented.

What has been said disposes of the plaintiff's exceptions to paragraphs 11 to 14, inclusive, of the judge's findings. The sole basis for the attack on these findings appears to be that they were inconsistent with the rulings discussed above.

Certain of the plaintiff's requests had to do with another policy of insurance issued by another insurer (Firemen's Mutual Insurance Company) covering loss "for any direct physical damage to the property herein insured actually done by participants in and at the time of, a riot or civil commotion and at any time by strikers or any person or persons of malicious intent." The only possible bearing that this policy could have in the present action arises from a clause in the defendant's policy to the effect that if the plaintiff carried "other insurance covering such loss or damage as is covered by this policy, the company shall not be liable for a greater proportion of any such loss or damage than the amount applicable thereto as hereby insured bears to the total amount of all valid and collectible insurance covering such loss or damage." Obviously this clause becomes operative only in the event that the defendant becomes liable under its policy. But on the findings of the judge the defendant was not liable. Consequently, whether Firemen's policy constituted "other insurance" within the meaning of the clause just quoted is an academic question, and the judge's rulings with respect to that policy are of no importance.

*Exceptions overruled.*