CHARLES HOLDER *vs.* GILBANE BUILDING COMPANY.

Suffolk. November 14, 1984. — January 18, 1985.

Present: KASS, ROSE, & SMITH, JJ.

*Negligence,* Building contractor. *Practice, Civil,* Mistrial, Verdict, Correction of error.

In an action by an employee of a subcontractor on a construction project against the general contractor to recover for injuries sustained when he fell from a roof while working on the construction site, evidence that the general contractor was responsible for safety on the job, that the employee had been assigned to work on the roof, that snow and ice had accumulated on the roof, making it slippery, and that supervisory personnel had done nothing to protect workmen sent up to the icy roof except to admonish the workmen to be careful warranted a finding against the general contractor. [217-218]

Discussion of the options available to a judge when a special verdict returned by a jury has inconsistencies. [218-220]

After an apparently inconsistent special verdict had been received, recorded, and proclaimed, the jury had been discharged, and judgment was entered, the judge did not have authority to declare a mistrial, although the judge could, on a motion properly before him, vacate the judgment, thus necessitating a new trial. [219-220]

Where the jury in a tort action had found the plaintiff's total damages to be $180,000, but a judgment for the plaintiff for $108,000 was entered based on an inconsistency in the jury's special verdict respecting the plaintiff's contributory negligence, and where it appeared that the plaintiff, who had moved to amend the judgment, would be willing to accept the lower amount rather than have a new trial, it was held that a new trial would not be required if the plaintiff withdrew his motion to amend. [220]

CIVIL ACTION commenced in the Superior Court on June 19, 1978.

The case was tried before *Paul G. Garrity,* J.

*Leonard Glazer* (*Alan Katz* with him) for the plaintiff.

*Robert H. Flynn* for the defendant.

KASS, J. There was, on the face of it, some confusion in the special verdict which the jury returned.[1] In response to the first two questions of the special verdict; the jury had found that Gilbane's negligence was the proximate cause of injuries which the plaintiff had suffered on March 15, 1978, when he fell while working at a construction site. The jury, in answer to the third question, assessed the plaintiff's damages at $180,000. The jury further answered as follows to questions four, five, and six:

"4. Was the plaintiff negligent?

Yes (X)          No ( )

"5. Was any negligence on the part of the plaintiff a proximate cause of the plaintiff's injuries?

Yes ( )          No (X)

"6. If the answers to questions four and five are yes, please assess comparative degrees of fault by percentages with the total of the plaintiff's and Gilbane's negligence being deemed to be 100%.

| | |
|---|---|
| Plaintiff's negligence | 40% |
| Defendant Gilbane Building Company's negligence | 60% |
| TOTAL | 100%" |

Defense counsel at once called to attention the inconsistency between the answers to questions number five and number six, but beyond so commenting, took no action. The trial judge waved the suggestion aside, and, on the basis of the jury's special verdict, entered judgment for $108,000, with interest from June 19, 1978, the date the complaint was filed.

Shortly following the entry of judgment, counsel for the plaintiff moved to amend the judgment on the ground that the answer of the jury to special question number five, viz., that the negligence of the plaintiff was not a proximate cause of

---

[1] As to special verdicts, see Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974).

the plaintiff's injuries, entitled the plaintiff to the full amount of the damages which the jury had assessed. Two weeks after the jury had returned their verdict and had been discharged, the trial judge acknowledged the inconsistency in the jury verdict and decided to recall so many of the jurors as were available in the courthouse to ask them if the forelady had accurately recorded the jurors' verdict. "[I]f I even go a word beyond that," the judge told counsel, "which you both agree that I should not; please stop me on the spot, and please correct me. And I request that you do so."

Nevertheless, when the judge sought to interview the jurors beyond that limited question and counsel remonstrated, the judge became irate and declared a mistrial.[2] An order was entered vacating the judgment. With no final judgment left to appeal from, the plaintiff sought leave from a single justice of this court to appeal from the order declaring a mistrial, and leave was allowed.

The principal issue on appeal, raised by the plaintiff, is whether the judge could lawfully declare a mistrial at so late a stage in the proceedings, i.e., after the verdict had been recorded and proclaimed. The defendant, Gilbane, entered a cross appeal[3] from denial of its motion for judgment notwithstanding the verdict, and this places a preliminary question before us: Was there enough evidence to have taken the plaintiff's case to the jury in the first instance? If not, the difficulties with the jury verdict and the judge's posttrial actions with respect to it are moot.

---

[2] The judge explained, "The reason why I declare a mistrial is that that is the only way, based upon both of your reactions to what was going on this afternoon, where I engaged in an honest and sincere effort to find out what was going on here; and you both sought to obstruct me at every move that I was trying to make. I sincerely believe that you both were trying to do that. And the only appropriate thing to do in this context is declare a mistrial. That's it." Plaintiff's counsel objected to the declaration of a mistrial, and the court responded, "I declare a mistrial. And I do not want to talk to you anymore." The transcript shows plaintiff's counsel gamely trying to preserve the record with, "Your Honor, could you note my appeal – ," as the judge walked off the bench. We think that there was no cause for reproaching the lawyers, who, as we read the record, acted professionally.

[3] Leave for the cross appeal was granted by the single justice.

1. *Sufficiency of the evidence.* We turn first, therefore, to the motion for judgment notwithstanding the verdict, which puts the question whether, taken in the light most favorable to the plaintiff, without weighing the credibility of the witnesses or otherwise measuring the weight of the evidence, there was sufficient evidence from which the jury might reasonably infer negligence. *Forlano* v. *Hughes,* 393 Mass. 502, 504 (1984). *Rubel* v. *Hayden, Harding & Buchanan, Inc.,* 15 Mass. App. Ct. 252, 254 (1983). The jury could have found as follows: Gilbane, as general contractor to construct a building for Harvard University, undertook responsibility for safety on the job. Supplementary general conditions of the construction contract provided that "The Owner places special emphasis on the protection of persons and existing structures, and there shall be no compromise as to the degree of protection required." Holder, the plaintiff, was a journeyman carpenter employed by a woodwork subcontractor. On March 15, 1978, his foreman assigned the plaintiff to assist with the placement of several skylights for which the contractor had made cuts in the roof. Ice and snow had accumulated on the roof and the footing was slippery, even for one wearing nonskid shoes as the plaintiff was. No planks had been laid down for the workmen to walk on, although there was some wood on the roof which the workmen, including the plaintiff, might have used as planks. No foreman directed the work crew to put down planks. The most that supervisory personnel did was admonish the workmen to be careful about the ice on the roof.

The jury were not required to accept testimony of Gilbane's witnesses that it was customary in the trade not to remove snow and ice from roofs and that workmen were to put down planks. It was open to the jury to find that Gilbane did not take reasonable precautions to protect workmen sent up to the icy roof. *Texas & Pacific Ry.* v. *Behymer,* 189 U.S. 468, 470 (1903). *Poirier* v. *Plymouth,* 374 Mass. 206, 212-216 (1978). *Upham* v. *Chateau de Ville Dinner Theatre, Inc.,* 380 Mass. 350, 354 (1980). *Pignone* v. *Santa Anita Mfg. Corp.,* 17 Mass. App. Ct. 944, 945 (1983). *The T.J. Hooper,* 60 F.2d 737, 740 (2d Cir. 1932). Restatement (Second) of Torts § 295A

comment c (1965). No error attended the denial of the motion for judgment notwithstanding the verdict.

2. *Declaration of a mistrial.* Mistrial connotes an interruption of the trial because justice may not be done if the trial continues, and it results in the "discharge of the jury and the impanelling of another jury to try the case anew." *Curley* v. *Boston Herald-Traveler Corp.*, 314 Mass. 31, 32 (1943). *Murray* v. *Foster*, 343 Mass. 655, 660 (1962). See Nolan, Civil Practice § 398 (1975). In this case the jury verdict had been received, recorded and proclaimed and the jury had been discharged.[4] A judgment was entered. The time for declaring a mistrial had gone by.[5] Although the plaintiff had moved to amend the judgment, neither party had moved for a new trial. Ten days had elapsed since the entry of judgment and the judge, therefore, was without power to order a new trial on his own initiative. Mass.R. Civ.P. 59(d), 365 Mass. 828 (1974). It was open to the judge to order relief from judgment under Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974), because of a clerical mistake in the judgment or other part of the record, but he did not do so.

We pause, first, to consider what choices were available to the judge when the jury returned its puzzling special verdict. When faced with an apparently inconsistent special verdict, a trial judge should first attempt to discern some reasonable view of the case that will harmonize the apparent inconsistency. *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). See *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. 659, 664 (1976), which considered paragraph (b) of Mass.R.Civ.P. 49, 365 Mass. 812 (1974). See also Smith & Zobel, Rules Practice § 49.7 & n.52 (1977). If the answers, on any reasonable view, are inconsistent, the judge may resubmit the questions to the jury with additional instructions or may, if that is not successful or reasonably sus-

---

[4] As to when a verdict is final, see *Commonwealth* v. *Kalinowski*, 12 Mass. App. Ct. 827, 829-831 (1981); *Commonwealth* v. *Diaz, ante* 29, 31 n.2 (1984).

[5] As to the criteria for declaring a mistrial, at least in the context of a trial of a criminal offense, see *Lovett* v. *Commonwealth*, 393 Mass. 444, 447-449 (1984).

ceptible of success, order a new trial. *Morrison* v. *Frito-Lay, Inc.*, 546 F.2d 154, 161 (5th Cir. 1977). *Mercer* v. *Long Mfg. N.C., Inc.*, 671 F.2d 946, 947-948 (5th Cir. 1982). Smith & Zobel, Rules Practice § 49.9 (1977). 9 Wright & Miller, Federal Practice and Procedure § 2510 (1971). Cf. *Hayes* v. *Ariens Co.*, 391 Mass. 407, 408-409 (1984). Compare *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 849 n.11 (1983). A party who wishes to preserve the point, however, must move to correct the inconsistency prior to dismissal of the jury. *Ibid.* See *Raytheon Mfg. Co.* v. *Indemnity Ins. Co.*, 333 Mass. 746, 749 (1956), decided under old practice.

None of this was done, but the judge was not powerless to correct an error in the judgment entered on the verdict. The plaintiff had timely moved to amend the judgment, a motion which lay under Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974).[6] That motion provided a basis for the judge's attempt to receive the unanimous statement of all the jurors, even though they had separated, to correct what may have been a clerical error in the answer to question number five of the special verdict. *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 387-388 (1912). In the *Randall* case there was an inconsistency or mistake upon the face of the jury's answers to special questions and the general verdict. The court (per Rugg, C.J.) considered an attempt to correct the error through inquiry of the jury after discharge more consonant with justice "than to put the parties and the public to the expense of another trial." *Id.* at 388.

In the case now before us, the effort to straighten out the jury's verdict failed because the responses of the recalled jurors did not dissipate the confusion and for the reason, itself dispositive, that all of the jurors who had sat on the case were not available. At that juncture, it was open to the judge under rule

---

[6] There is some overlap between Mass.R.Civ.P. 59(e) and Mass.R.Civ.P. 60 (relief from judgment). The plaintiff did not invoke a particular rule in his motion. If a motion under rule 59(e) would, as here, have been timely, the motion for relief is construed as a rule 59(e) motion. *Foman* v. *Davis*, 292 F.2d 85, 87 (1st Cir. 1961), rev'd on other grounds, 371 U.S. 178 (1962). 11 Wright & Miller, Federal Practice and Procedure § 2817 n.27 (1973).

59(e) to vacate the judgment. *American Family Life Assur. Co.* v. *Planned Mktg. Associates*, 389 F. Supp. 1141, 1144 (E.D. Va. 1974). 11 Wright & Miller, Federal Practice and Procedure § 2817, at 111 (1973). As the judge, on a motion properly before him, could have vacated the judgment, thus necessitating a new trial, we are disposed to look upon his declaration of mistrial as a misnomer and to look to the substance of the action.

Less drastic action than unconditionally vacating the judgment was, however, available. On any view of the jury's verdict, the defendant could not complain about a judgment of $108,000, plus interest. That is the lowest judgment the jury could have intended. After the "mistrial," the plaintiff moved to restore the judgment and reiterated his earlier position that it should be amended, but failing amendment, the plaintiff's motion appears to prefer restoration of the judgment originally entered to the hazard of a new trial. We think that option ought still to be made available to the plaintiff.

If, within ten days of the issuance of the rescript, the plaintiff files in the Superior Court a motion to withdraw his earlier motion to amend the judgment, the motion to withdraw shall be allowed and an entry shall be made that the orders of November 2, 1983, declaring mistrial and vacating the judgment (thus, in effect, ordering a new trial) are reversed and the judgment of October 20, 1983, awarding $108,000 to the plaintiff, with interest thereon from June 19, 1978, shall be reinstated. Otherwise, the orders of November 2, 1983, are affirmed.

*So ordered.*