IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2004 Session

## IN RE CONSERVATORSHIP OF
## MICHAEL THOMAS JONES AND TIMOTHY ALAN JONES

## BEVERLY ANNE JONES
### v.
## KEVIN THOMAS JONES

**A Consolidated Appeal from the Circuit Court (Probate Division) for Davidson County**
**Nos. 95P-96, 95P-97, No. 01D-1666      Frank G. Clement, Jr., Judge**

---

**No. M2004-00173-COA-R3-CV - Filed December 22, 2004**

---

This appeal involves the court's authority to order a parent to pay support for an adult disabled child. The parties were married with two severely disabled adult sons. In 1995, while the parties were still married, the probate court established them as co-conservators for their sons. In June 2001, the mother filed a petition for divorce in circuit court. Neither party informed the divorce court of the conservatorships that had been established for their sons. The circuit court entered a final decree of divorce which incorporated a parenting plan, submitted by the father, which provided for joint custody of the sons. The divorce decree required the mother to pay child support to the father. The divorce decree was not appealed. The mother later filed a motion requesting that the decree requiring her to pay child support be vacated pursuant to Rule 60.02(3), asserting that the divorce court did not have subject matter jurisdiction to require her to pay support for the adult sons. Rather than rule on the mother's motion, the divorce court transferred the case to the probate court, which had before it the conservatorship actions. The father then filed a motion in the probate court asking it to confirm the divorce decree entered by the divorce court. The probate court, in the same order, denied the mother's motion to vacate and granted the father's motion to confirm the decree adopting the parenting plan, determining that the divorce decree entered by the divorce court was valid. The mother now appeals that order. We reverse, concluding that the divorce court did not have subject matter jurisdiction to order the parent to pay support for the adult disabled children, but finding that the probate court is permitted to consider requiring the parents to pay support in the context of the conservatorship proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Vicky V. Klein, Madison, Tennessee, for the appellant, Beverly Anne Jones.

Phillip Robinson, Nashville, Tennessee, for the appellee, Kevin Thomas Jones.

## OPINION

Plaintiff/Appellant Beverly Anne Jones ("Mother") and Defendant/Appellee Kevin Thomas Jones ("Father") were married in 1970.[1] Two sons were born of the marriage, Michael Thomas Jones, born in 1971, and Timothy Alan Jones, born in 1975. Both adult sons have an inherited metabolic disorder with mental retardation and other disorders. Both are severely disabled and are unable to care for themselves.

On January 17, 1995, Mother and Father filed petitions in the Seventh Circuit (Probate) Court for Davidson County ("probate court") to establish conservatorships for their adult sons. The cases were filed under the probate court docket numbers 95P-96 (Timothy) and 95P-97 (Michael). In the petitions, the parties alleged that Michael and Timothy, at that time ages twenty-three and nineteen respectively, were completely unable to handle their own affairs, live on their own, or earn an income. They averred that the only income available to each son was a social security payment of $303 per month, an amount not sufficient to meet their financial needs. Therefore, the parties proposed that they pay the sons' excess expenses from "their own household income, since they are the parents of [Michael and Timothy]." In light of those facts, the parties requested that they be appointed as co-conservators of both sons. On February 17, 1995, the probate court appointed the parties as co-conservators. The issue of support was not addressed in the order because the parties had agreed to provide support.

Over the next several years, the parties continued as co-conservators of Michael and Timothy, filing status reports on January 22, 2001, May 23, 2002, and April 1 2003. In all of the status reports, the parties stated that the social security payments to the sons did not cover their expenses, and that the parties had paid the balance of their sons' expenses from their own resources.

On June 27, 2001, Mother filed a petition for divorce against Father in the Second Circuit Court for Davidson County ("divorce court"). In her complaint, Mother listed Michael and Timothy as "minor children" of the marriage, gave their birth dates, and stated that "[b]oth children are mentally retarded and the parties are the legal guardians." Mother told neither her attorney nor the divorce court about the conservatorships established by the probate court for the parties' sons.

On January 18, 2002, Father filed a motion in the divorce court for child support pending the outcome of the divorce proceedings. On February 20, 2002, the divorce court ordered Mother to pay Father $417 per month in child support pending the outcome of the case.

---

[1]The parties apparently divorced in 1984 and remarried in 1986.

On February 15, 2002, Father filed an answer in the divorce court to Mother's divorce complaint and counterclaimed for divorce, as well. In his answer and counterclaim, Father stated that the parties were the parents of two "adult, but severely disabled children," who would never be self-sufficient and would require continued financial support by the parties. Father's counterclaim noted that the parties had, by agreement, shared custody "of the children with each of the parties having both children for a one week period of time, and thereafter, alternating the children week to week." Like Mother, however, Father notified neither his attorney nor the divorce court about the conservatorships established by the probate court.

On June 3, 2002, the divorce case was tried, and on June 24, 2002, the divorce court entered a final decree of divorce. As part of the decree, the divorce court approved a Permanent Parenting Plan ("the Parenting Plan") that had previously been proposed by Father. The Plan stated that Michael and Timothy were "severely handicapped and will require continued support by the parties after their majority." It stated that the parties would share equally the rights and responsibilities of caring for Michael and Timothy, and that they would continue their arrangement of allowing the sons to stay together with each parent having custody of both every other week. The Plan designated Mother as the custodian for Timothy and Father as the custodian for Michael for purposes of state and federal statutes that require such designations. It further provided that Mother would pay $783 per month to Father in child support.[2] Mother did not appeal the final decree.

On March 28, 2003, Mother filed a motion in the divorce court to set aside the final decree of divorce pursuant to Rule 60.02(3) of the Tennessee Rules of Civil Procedure.[3] In the motion, Mother alleged that the decree was void to the extent that it adjudicated matters regarding Michael and Timothy. She argued that, because Michael and Timothy had reached the age of majority when the matter was tried, the divorce court "was without subject matter jurisdiction to make any orders regarding said children, including, but not limited to, those pertaining to custody and child support." Because it was void *ab initio*, Mother argued, the divorce court's order should be vacated and Father should be required to return to her the $6,315 that she had paid in child support to date. Father filed his response to Mother's motion on June 2, 2003, arguing that the divorce court had jurisdiction to

---

[2]Mother's annual salary was $90,000 per year, and Father's salary was $44,200 per year plus bonuses. The Plan calculated Mother's obligation by determining the difference between Mother's obligation for one son ($1,673) and Father's obligation for one son ($890 per month), which is $783 per month.

[3]Rule 60.02 provides in part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, . . . ; or (5) any other reason justifying relief from the operation of the judgment. . . .

Tenn. R. Civ. P. 60.02.

order support for a severely disabled child past the age of majority pursuant to Tennessee Code Annotated § 36-5-101(p). That statute provides:

> (p)(1) Except as provided in subdivision (p)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, until such child reaches twenty-one (21) years of age.

> (2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent and the court determines that it is in the child's best interest to remain under such care and supervision and the obligor is financially able to continue to pay child support. In such cases, the court may require the obligor to continue to pay child support for such period as it deems in the best interest of the child.

> (3) In so doing, the court may use the child support guidelines.

Tenn. Code Ann. § 36-5-101(p) (2001 & Supp. 2003). It is undisputed that Michael and Timothy are both "severely disabled" as that term is used in subsection (p)(2).

On July 7, 2003, the divorce court issued an order on Mother's motion. The divorce court agreed with Mother's contention "that it in fact had no jurisdiction over the persons of the children, as to parental responsibility and residential time due to the conservatorship order." Rather than granting or denying her request to set aside the divorce decree, the divorce court transferred the case to the probate court "so that any further orders may be consistent with the conservatorship in that court." The divorce court's order provided that all other orders, particularly the child support orders, would remain in effect "[u]ntil the Seventh Circuit [Probate] Court makes any further orders." Thus, the divorce case was transferred to the probate division of the circuit court and was assigned to the same trial judge who was presiding over the conservatorship cases. The divorce case, however, was not consolidated with the conservatorship cases.

After the divorce case was transferred, Father filed a motion in the conservatorship cases to approve and confirm the Parenting Plan entered in the divorce case as the management plan for Michael and Timothy. Mother objected, arguing that the probate court had no authority to approve or confirm a void order entered by another court. She argued further that the probate court did not have jurisdiction to enter a "parenting plan" for Michael and Timothy, because such parenting plans were applicable only to minor children. On July 25, 2003, the probate court heard arguments on Mother's motion in the divorce action to set aside the divorce decree, as well as Father's motion in the conservatorship actions to approve the Parenting Plan. The matter was taken under advisement.

On December 31, 2003, the probate court entered identical orders in the divorce case and in the conservatorship cases, denying Mother's motion to set aside the final divorce decree and granting

Father's motion to approve and confirm the Parenting Plan entered by the divorce court. The probate court held:

> The co-conservators/parents of the children and their respective counsel participated in the formation of the Parenting Plan and they voluntarily agreed to the Plan. The [divorce court] judge . . . approved the Parenting Plan that had been agreed upon by the parties. This Court finds nothing irregular in the Parenting Plan or the procedure by which it was adopted by the parties or the trial judge. Moreover, this Court finds nothing in the Plan that is adverse to the rights and privileges of the wards of the conservatorships. Further, this Court finds no basis under Rule 60, Tenn. R. Civ. P., to justify relief from the agreed Parenting Plan or the order approving the plan.

Therefore, based on its understanding that the parties had voluntarily agreed to the Parenting Plan,[4] the probate court determined that there was no basis for relief under Rule 60 from the divorce court's decree and confirmed the Parenting Plan. From that order, Mother now appeals.[5]

On appeal, Mother argues that the probate court erred in refusing to set aside the final decree of divorce insofar as it addressed issues pertaining to Michael and Timothy, particularly the provision ordering her to pay child support. Mother maintains that the divorce court lacked subject matter jurisdiction to adjudicate matters pertaining to the parties' adult children. She asserts that there was no agreement between the parties regarding child support, and argues that there is no statutory authority for ordering her to pay child support for adult children. Mother contends that section 36-5-101(p) did not give the divorce court authority for the child support award in this case. She also argues that Tennessee's conservatorship statutes provide no statutory authority for the probate court to enter a "Parenting Plan" as a management plan for Michael and Timothy in the conservatorship cases. Moreover, Mother argues, there is no need for such a Plan. On the contrary, Mother points out, the status reports filed by the parties as joint conservators indicate that the parties work amicably together as co-conservators. Therefore, she claims, the probate court's confirmation and approval of the divorce court's order was nothing more than an attempt to breathe life into an otherwise void and unnecessary order.

The facts in this case are not disputed, and only questions of law are involved. Therefore, we review the issues in this appeal *de novo*, with no presumption of correctness. ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000) (stating that questions of subject matter jurisdiction are issues of law); ***see Southwest Williamson County Cmty. Ass'n v. Saltsman***, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001) (same).

---

[4]The divorce court adopted the plan proposed by Father, and the record does not indicate that the parties in fact agreed on the Parenting Plan.

[5]A copy of the December 31, 2003 order was entered on the record in all three cases – the divorce case and each of the conservatorship cases. Mother filed separate notices of appeal in all three cases, and the appeals were consolidated by this Court *sua sponte*.

We first address Mother's argument that the divorce court lacked subject matter jurisdiction to order her to pay child support for her adult disabled children. Father argues that section 36-5-101(p) provides such authority. Issues of statutory interpretation are questions of law, which we review *de novo*. **Kilby v. Kilby**, No. 03A01-9712-CH-00549, 1999 WL 76065, at *3 (Tenn. Ct. App. Jan. 28, 1999). "Our role in construing statutes is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." **Id.** In interpreting a statute, we must first look to the plain and ordinary meaning of the language in the statute "without forced or subtle construction that would limit or extend the meaning of the language." **Id.** If the meaning of the statute is plain, there is no need to inquire into the legislative intent, because the legislature will be presumed to intend what the statute says. **Carson Creek Vacation Resorts, Inc. v. State**, 865 S.W.2d 1, 2 (Tenn. 1993). If, however, the language of the statute is ambiguous, we must attempt to discern the legislature's intent from the statutory scheme as a whole, as well as the legislative history. **State ex rel. Pope v. U.S. Fire Ins. Co.**, 145 S.W.3d 529, 535 (Tenn. 2004).

Applying this familiar standard, we look first to the language of the statute under scrutiny. Section (p), quoted in full above, provides that, for a severely disabled child, "the court may *continue* child support beyond a child's minority" so long as continuing that support is in the best interest of the child.[6] Tenn. Code Ann. § 36-5-101(p)(1), (2) (emphasis added). In this case, of course, there was no child support order in place when the parties' sons reached majority, and therefore there was no child support order to "continue." We must determine, then, whether the statute authorizes a trial court in a divorce case to order support for a child who turned eighteen years old before the divorce action was filed.

A review of the law regarding the duty to support adult disabled children is helpful to an understanding of the parties' arguments on appeal. In England and in early American common law, the duty of a parent to support his or her children, regardless of age, was a moral obligation, not a legal one. Thus, in many jurisdictions, there was no legal obligation to support children absent a statute imposing such an obligation. **See** M. C. Dransfield, Annotation, *Parent's Obligation to Support Adult Child*, 1 A.L.R.2d 910, § 2 (1948); Comment, *The Parental Duty to Support Disabled Adult Children*, 9 DePaul L. Rev. 45 (1960). Over time, it became generally accepted in most jurisdictions that, under the common law, a parent has a legal obligation to support his minor child, but has no obligation to support a child past the age of majority. **See** Noralyn Harlow, J. D., Annotation, *Postmajority Disability as Reviving Parental Duty to Support Child*, 48 A.L.R.4th 919, at § 2 (1986); Dransfield, *supra*, 1 A.L.R.2d 910, at § 3. Many jurisdictions, however, recognize an exception to this general rule, either by common law or by statute, and require a parent to support his or her child beyond majority if the child is mentally or physically incapacitated or otherwise unable to care for him or her self. Harlow, *supra*, 48 A.L.R.4th 919, at § 2; Dransfield, *supra*, 1

---

[6]In addition, for the support to extend past the age of 21, the child must be "living under the care and supervision of a parent and the court [must] determine[] that it is in the child's best interest to remain under such care and supervision and the obligor is financially able to continue to pay child support." Tenn. Code Ann. § 36-5-101(p)(2) (2001 & Supp. 2003).

A.L.R.2d 919, at § 5. This exception is generally based on the theory that a disabled child is prevented from being emancipated from his parents and, thus, is still a minor in the eyes of the law. Harlow, *supra*, 48 at A.L.R.4th 919, at § 2.

In *Sayne v. Sayne*, 284 S.W.2d 309 (Tenn. Ct. App. 1955), Tennessee joined the majority of jurisdictions in recognizing a common law duty of parents to support their adult disabled child. In *Sayne*, a divorce case, the parties' twenty-seven year-old daughter had been disabled since childhood. The trial court awarded custody of the daughter to the mother and ordered the father to pay child support. The father appealed, arguing that he had no duty to support his daughter because she was past the age of majority. *See Sayne*, 284 S.W.2d at 310. The appellate court rejected the father's position and held that the trial court had the authority to order the father to pay child support for his adult disabled child. *Id.* at 311-12.

The *Sayne* court recognized a split in authority on the subject of whether, absent a statute imposing such an obligation, a parent can be required to support an adult disabled child. It noted that a minority of jurisdictions had held that, "in the absence of a statute imposing liability, the parent, even though able to provide support, is under no obligation to support an adult child unable to support and care for itself." *Id.* at 311. The *Sayne* court observed, however, that the majority of jurisdictions demonstrated "a growing tendency" to require such support, even in the absence of a statute, calling it the "humanitarian rule." *Id.* The reasoning, the court stated, was that a disabled child cannot care for himself, and would have the same need for support, care, and maintenance both before and after he becomes an adult. *Id.* (citing *Wells v. Wells*, 44 S.E.2d 31, 34 (N.C. 1947)). The *Sayne* court cited with approval *Crain v. Mallone*, 113 S.W. 67, 68 (Ky. Ct. App. 1908), in which the court opined, "[W]e see no difference in the principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent." *Id.* at 312. The *Sayne* court stated that the child support statute did not limit the power of the court to award child support only to minor children. Thus, the court adopted the "humanitarian rule" and held that a parent's obligation to pay child support may extend past the child's age of majority when the child is disabled. *Id.*

Until 1999, the holding in *Sayne* was cited as the basis for the proposition that Tennessee recognized the common law rule that parents have a duty to continue to support a disabled child past the age of majority.[7] *See*, *e.g.*, *Sandusky v. Sandusky*, No. M2000-00288-COA-R3-CV, 2001 WL 327898, at *4 (Tenn. Ct. App. Apr. 5, 2001); *Howard v. Howard*, 991 S.W.2d 251, 256 (Tenn. Ct. App. 1999); *Smith v. Smith*, No. 03A01-9410-GS-00391, 1995 WL 140763, at *1 (Tenn. Ct. App. Mar. 31, 1995); *Mingle v. Mingle*, No. 01-A01-9305-CH-00197, 1993 WL 377609, at *2 (Tenn. Ct. App. Sept. 24, 1993); *Burks v. Burks*, No. 6, 1991 WL 12846, at *4 n.2 (Tenn. Ct. App. Feb. 8, 1991); *Barnhill v. Barnhill*, 826 S.W.2d 443, 451 n.4 (Tenn. Ct. App. 1991); *Stevens v. Raymond*, 773 S.W.2d 935, 938 (Tenn. Ct. App. 1989); *Hodge v. Hodge*, No. 753, 1988 WL 55729,

---

[7]Some courts limited the exception to cases in which the child acquired his or her disability during minority. *See*, *e.g.*, *Howard v. Howard*, 991 S.W.2d 251, 256 (Tenn. Ct. App. 1999); *see generally* Noralyn O. Harlow, J.D., Annotation, *Postmajority Disability as Reviving Parental Duty to Support Child*, 48 A.L.R.4th 919 (1986).

at *1 (Tenn. Ct. App. June 2, 1988); *see also Sanders v. Sanders*, 902 P.2d 310, 315 (Ala. 1995) (relying on *Sayne* as persuasive authority for establishing that a parent has a continuing duty to support adult dependent children); *Riggs v. Riggs*, 578 S.E.2d 3, 5 & n.1 (S.C. 2003) (identifying *Sayne* as authority for the proposition that Tennessee recognizes a common law duty of parental support for an adult disabled child); 59 Am. Jur. 2d *Parent and Child* § 78 & n.1 (citing *Sayne* for proposition that parents' duty to support child remains unchanged after majority for a child "of weak body or mind, and unable to care for himself after coming of age").

In early 1999, however, a trilogy of Court of Appeals cases were decided that appeared to reverse the holding in *Sayne*. *See Day v. Gatewood*, No. 02A01-9805-CV-00141, 1999 WL 269928 (Tenn. Ct. App. Apr. 30, 1999); *Scott v. Scott*, No. 03A01-9708-CH-00305, 1999 WL 39506 (Tenn. Ct. App. Jan. 29, 1999); *Kilby v. Kilby*, No. 03A01-9712-CH-00549, 1999 WL 76065 (Tenn. Ct. App. Jan. 28, 1999).[8] In *Kilby*, the parties were divorced at a time when their disabled daughter was a minor. In the divorce decree, the parties were awarded joint custody of the child, but no provision was made for child support. *Kilby*, 1999 WL 76065, at *1. Later, just after the daughter turned eighteen years old, the mother filed a petition for primary physical custody. The father objected, arguing that the divorce court no longer had jurisdiction over custody matters because the daughter had become an adult. *Id.* at *2. The trial court rejected that argument and awarded primary physical custody to the mother. The trial court further ordered the father to pay the mother child support and to pay for hospitalization insurance for the child. *Id.* at *2.

On appeal, the father again argued that the divorce court had no jurisdiction to consider the matter of custody and financial support for an adult child. The appellate court agreed, reasoning that Tennessee Code Annotated § 36-6-101, which gives a trial court authority to award custody and child support in a divorce case, applies only to "minor children." That statute reads in part:

> (a)(1) In a suit for annulment, divorce or separate maintenance, where the custody of a minor child or minor children is a question, the court may, notwithstanding a decree for annulment, divorce or separate maintenance is denied, award the care, custody and control of such child or children to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand, and the court may decree that suitable support be made by the natural parents or those who stand in the place of the natural parents by adoption. Such decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require.
>
> * * *
>
> (b) Notwithstanding any provision of this section to the contrary, the party, or parties, or other person awarded custody and control of such child or children shall be

---

[8]Both *Kilby* and *Scott* were decided by the same court one day apart from one another.

entitled to enforce the provisions of the court's decree concerning the suitable support of such child or children in the appropriate court of any county in this state in which such child or children reside; provided, that such court shall have divorce jurisdiction, if service of process is effectuated upon the obligor within this state. Jurisdiction to modify or alter such decree shall remain in the exclusive control of the court which issued such decree.

Tenn. Code Ann. § 36-6-101(a)(1) & (b) (2001 & Supp. 2004). The *Kilby* court determined that "minor" means "any person who has not attained 18 years of age." *Kilby*, 1999 WL 76065, at \*3. The court acknowledged the *Sayne* decision, which held that a trial court could, in the context of divorce proceedings, order a parent to pay support for an adult disabled child. It noted, however, that since *Sayne* was decided, legislation had been enacted specifically addressing mentally ill and mentally retarded persons. *See* Tenn. Code Ann. § 33-1-101 (2001). *Id.* at \*4-\*5. Moreover, the *Kilby* court observed that the conservatorship statutes, Tennessee Code Annotated § 34-11-101, *et seq.*, and § 34-13-101, *et seq.*, were enacted in 1993. Those statutes defined "minor" as "any person who has not attained eighteen (18) years of age and who has not otherwise been emancipated," while "disabled person" was defined as "any person eighteen (18) years of age or older determined to be in need of partial or full supervision, protection, and assistance" because of his disability. *Id.* at \*5. In light of this legislation, the *Kilby* court held, it was "clear that the meaning of the word minor in the Tennessee Code designates a person under the age of 18," and that section 36-6-101, therefore, was not a basis on which the trial court had jurisdiction to modify custody. *Id.* at 5. The appellate court observed that the procedures outlined in the conservatorship statutes should have been followed, and commented that a "conservator would have the authority to seek a decree requiring the parents to contribute" to the support of the parties' adult disabled child. *Id.* at \*5-\*6.

In *Scott*, as in *Kilby*, the parties were divorced when their disabled daughter was a minor. In the divorce decree, the paternal grandparents were awarded custody of the parties' child. *Scott*, 1999 WL 39506, at \*1. After the daughter reached the age of majority, the mother filed a petition in the divorce court for primary custody of her daughter. The father and the grandparents objected to the mother's petition. In the same proceeding, the father and his parents filed a petition to establish a conservatorship for the adult disabled child, requesting that the court appoint the grandparents as co-conservators. The trial court dismissed the mother's petition for custody and granted the conservatorship petition. The trial court stated that the mother's petition for custody pursuant to the divorce statutes was "the inappropriate avenue through which to address the present, special needs of [the daughter]," and that "the proper proceeding is an action for conservatorship. . . ." *Id.* Accordingly, the trial court in *Scott* concluded that the daughter's best interest was served by appointing the grandparents as her co-conservators. *Id.* The mother appealed.

The appellate court in *Scott* determined, as in *Kilby*, that the term "minor" in section 36-6-101 means any person who has not reached age eighteen. *Id.* at \*2-\*3. Because section 36-6-101 authorized the trial court's jurisdiction only over cases involving minor children, the appellate court reasoned, the trial court properly dismissed the mother's petition for custody under that statute. *Id.* at \*4. The mother argued that, under *Sayne*, the trial court retained jurisdiction over matters

involving adult children who were disabled, even absent statutory authority. The appellate court rejected that argument and distinguished *Sayne,* because that case did not address the issue of custody of the adult disabled child. *Id.* at *3. The appellate court in *Scott* held that the trial court had properly adjudicated the conservatorship petition, stating that "T.C.A. 34-11-121 conveys plenary powers to the court in conservatorship actions," and that "the state has the constitutional power to act for incompetents and for partial incompetents to the extent of the partial incompetency." *Id.* (footnote omitted). Thus, the *Scott* court held that the trial court properly adjudicated the issue of the adult disabled child's custody pursuant to the conservatorship statutes and not the divorce statutes. *Id.* at *4.

A few months later, the Court of Appeals decided a similar issue in *Day v. Gatewood*, No. 02A01-9805-CV-00141, 1999 WL 269928 (Tenn. Ct. App. Apr. 30, 1999). In that case, the parties divorced when their son, who was not disabled, was a minor. The mother was granted custody of the child, and the father was ordered to pay child support. *Day*, 1999 WL 269928, at *1. A few months after the son's eighteenth birthday, but one month before he had graduated from high school, the son was involved in a car accident that left him disabled. The mother obtained custody of the parties' son. When the son was twenty-four years old, the mother filed a petition in the divorce court seeking an order requiring the father to continue to pay child support based on the son's severe disability. A consent order was later entered, in which the father agreed to continue to pay child support. *Id.* When the son was twenty-eight years old, the father filed a petition to terminate his child support obligation, asserting that the son was no longer completely disabled. The petition was denied.

On appeal, the father in *Day* asserted that the trial court did not have subject matter jurisdiction to entertain the mother's petition for continued support and that, consequently, the consent order requiring him to pay support was void and unenforceable. *Id.* The appellate court agreed. The *Day* court acknowledged the holding in *Sayne*, but noted that *Sayne* had been premised on the fact that there was, at that time, no statutory authority expressly or implicitly limiting the trial court's authority to award support for adult children. Relying on *Kilby* and *Scott*, the *Day* court concluded that the Tennessee divorce statutes applied only to "minor" children and, therefore, did not authorize the court to exercise continuing jurisdiction pursuant to the divorce statutes after the child had turned eighteen. Like the *Kilby* and *Scott* courts, the *Day* court commented that "Tennessee's conservatorship statutes provide an appropriate avenue for addressing the needs of the parties' adult child." *Id.* at *5 (footnote omitted). It remarked that, if a conservator were appointed for the son, then "the individual appointed as his conservator may then request an order requiring [the father] and/or [the mother] to contribute to [the son's] support." *Id.*

Effective May 26, 1999, about a month after *Day* was decided, the Tennessee General Assembly, obviously in response to *Day*, amended section 36-5-101(p) to include subsection (p)(2), quoted above. Subsection (p)(2) "requires (as did the common law) continuing support of a severely disabled child, subject to findings of the child's best interest and the obligor['s] ability to pay." *State ex rel. Holtsinger v. Elrod*, No. E2001-00257-COA-R3-CV, 2002 WL 62984, at *1 (Tenn. Ct. App. Jan. 17, 2002).

-10-

In the instant case, Father acknowledges that ***Kilby***, ***Scott,*** and ***Day*** reversed the holding in ***Sayne*** by concluding that a trial court has no authority under the divorce statutes to award child support with respect to a child beyond the age of majority. He argues, however, that by enacting subsection (p)(2), the Legislature indicated clearly that it intended to reject the ***Kilby-Scott-Day*** cases and "enshrine" ***Sayne*** as the applicable law. Furthermore, he claims, the phrase "continues child support" in subsection (p)(1) should be interpreted to apply to parties who have been providing support for their disabled adult child continuously before and after the child reached majority and who should be required to continue to pay such support, even if the support was not paid pursuant to a court order. To hold otherwise, he argues, would impose an irrational distinction between severely disabled children whose parents divorce before they turn eighteen, and those whose parents divorce after they turn eighteen.

Mother argues that, under the circumstances of this case, the amendment to the divorce statutes does not alter the application of ***Kilby***, ***Scott***, and ***Day***. Mother contends that the addition of subsection (p)(2) to section 36-5-101 authorizes a trial court to "continue" a child support order indefinitely for a severely disabled child, but only if there is an existing support order to "continue" that was entered when the child was a minor. Mother maintains that the divorce statutes do not authorize a trial court to order support for an adult disabled child if no child support order was entered during the child's minority.

In support, Mother notes that the ***Kilby***, ***Scott***, and ***Day*** cases were cited with approval in a case with facts similar to those in the instant case and decided after the effective date of the statute, ***Mora v. Mora***, No. W1999-02483-COA-R3-CV, 2001 WL 609567 (Tenn. Ct. App. June 4, 2001). In ***Mora***, the parties had an adult disabled daughter. They divorced in 1991. In post-divorce proceedings, the divorce court granted the mother's petition for custody of the parties' 45-year-old disabled daughter and ordered the father to pay child support. The appellate court reversed, citing the ***Kilby***, ***Scott***, and ***Day*** cases and holding that the trial court did not have subject matter jurisdiction to appoint a guardian or to order the father to pay support for the parties' adult disabled child. ***Mora***, 2001 WL 609567, at *4-*6. It observed that the conservatorship statutes would be "an appropriate avenue" to address the disabled daughter's needs. Therefore, Mother relies on ***Mora*** as a case decided after the amendment to section 36-5-101(p) that reaffirms the holding in ***Kilby***, ***Scott***, and ***Day***.

***Mora v. Mora***, ***supra***, however, did not address the issue of whether the enactment of section 36-5-101(p)(2) conferred jurisdiction in the context of divorce proceedings for a court to pay child support for an adult disabled child, where no such order was entered while the disabled child was a minor. The appellate court does not mention the statute, and it appears that the trial court's order predated the amendment. In any event, the issue presented here was not addressed in ***Mora***. Indeed, we have found no controlling Tennessee decision. Therefore, it appears that whether section 36-5-101(p)(2) provides the statutory authority necessary for a divorce court to enter an order requiring a noncustodial parent to pay child support indefinitely for an adult disabled child , where there was no child support order entered during the child's minority, is an issue of first impression in Tennessee.

Section 36-5-101(p) states that it confers jurisdiction on a trial court to "*continue* child support" for a severely disabled child beyond the child's minority. This language indicates that the trial court is authorized to do so only where there was in existence a child support order that was entered when the child was a minor, or as a modification of a child support order that was valid when it was entered. We note that prior to the addition of subsection (p)(2), section (p) included the same language as in the current subsection (a), which allowed a trial court to "continue child support" for a handicapped or disabled child, but the provision limited the continuation of that support to "until such child reaches twenty-one (21) years of age." Tenn. Code Ann. § 36-5-101(p). The legislature's addition of subsection (p)(2) merely eliminated the twenty-one-year-old age limitation in the case of a child that is severely disabled "subject to findings of the child's best interest and the obligor's ability to pay." *Holtsinger*, 2002 WL 62984, at *1.

Father argues that this interpretation leads to an absurd result, because it creates two classes of severely disabled children – those whose parents divorce before they turn eighteen and children whose parents divorce after they turn eighteen. He contends that the only sensible interpretation of the amended statute is that the trial court may order support payments for an adult disabled child where the parent has continuously provided support prior to the petition, regardless of whether the support was paid pursuant to a court order. Father maintains that this would be an order "continuing" child support within the meaning of the amended statute.

Father argues that the legislative history of Section 36-5-101(p)(2) supports his position that the legislature intended to reverse by statute the holdings in the *Kilby-Scott-Day* line of cases.[9] The legislative debates over the 1999 amendment in fact reflect that the main goal in enacting the new provision was to eliminate the age limitation applicable to "handicapped or disabled" children in situations in which the child is severely disabled and residing with a parent. It indicates that the word "continue" was not included casually in the amendment; indeed, its inclusion was important to its passage. Concern was expressed that the statute as amended might be overly broad. In the March 23, 1999 House of Representatives debate, Representative Carol Chumney asked a question about whether the statute would apply in a hypothetical situation in which a healthy forty-year-old child of divorced parents suddenly became disabled and it was necessary for the adult disabled child to live with one of the parents. Representative L. Mike Williams stated that "after age 21 there is no custodial parent" unless that parent wants to *continue* care. In such a case, the Representative stated, the non-custodial parent should be obligated to help. Representative Chumney then expressed her opinion that "the word 'continue' is important to be in there." In the Senate debates, the new provision was described as merely "a housekeeping clarification bill" eliminating the twenty-one year old age limitation for support of severely, as opposed to mildly, disabled children. Overall, the legislative debate regarding this provision does not reflect an intent to reinstate the holding in *Sayne* as the law in Tennessee.

---

[9]On August 16, 2004, in response to the Court's request at oral argument, Father submitted a transcript of the legislative history of Tennessee Code Annotated 36-5-101(p).

-12-

Since there are no controlling Tennessee decisions and the legislative intent is not clearly indicated in the legislative history, we look to other jurisdictions for persuasive authority. A similar Texas statute was interpreted in *Red v. Red*, 552 S.W.2d 90 (Tex. 1977). In that case, the parties were divorced in 1963, and the mother was awarded custody of the parties' fourteen-year-old disabled daughter. The father was ordered to pay child support until the daughter reached age eighteen. The father, however, voluntarily continued to provide support for the daughter until she became twenty-six years old in 1975. *Red*, 552 S.W.2d at 91. In May 1975, after the father stopped making his voluntary payments, the mother filed a petition in the divorce court to modify the 1963 divorce decree to provide that the father had a continuing duty to pay support for the disabled daughter. The applicable Texas statute provided that a divorce court had the authority to order that child support payments for a disabled child "be continued after the 18th birthday and extended for an indefinite period." *Id.* at 92 (quoting Tex. Fam. Code § 14.05 (1974)). The *Red* court held that the trial court was only authorized to require child support payments to "be continued" past majority if the request for continuation of such support were made before the child turned eighteen. The court determined that the original divorce decree was a final order, that the father's duties thereunder had been fully performed and discharged, and that "[s]ubsequent thereto the divorce court ceased to have jurisdiction over the subject matter." *Id.*; *see also In re Jacobson*, 842 A.2d 77, 79 (N.H. 2004) (holding that a statute allowing a court to extend support beyond the time of majority presupposes that an existing child support order was entered before the child reached the age of majority). Therefore, in *Red*, the divorce court's jurisdiction to "continue" the original child support order ended when the original child support obligation expired because the child reached majority.

In the instant case, there was no child support order entered while Michael and Timothy were minors; the divorce petition was not filed until well after they were eighteen. Father makes a cogent argument that it does not make sense to distinguish between adult disabled children whose parents divorce before the child turns eighteen and those whose parents divorce afterward, provided the child was disabled and receiving financial support prior to reaching majority. Nevertheless, the language of the Texas statute in *Red* and the language of the Tennessee statute in the instant case is similar in that both statutes permit a divorce court to "continue" support payments indefinitely for adult disabled children. Under the reasoning in *Red*, and in view of the legislature's emphasis on the word "continue" in the legislative history, we must conclude that the word "continue" in the amended statute refers to the continuation of a valid child support order. Neither the language of the statute nor the legislative history supports Father's argument that the addition of subsection (p)(2) was meant to reaffirm or "enshrine" the holding in *Sayne*

Therefore, in applying section 36-5-101(p)(2), we must conclude that a trial court has the authority to "continue child support" for a severely disabled child only where an order awarding support was entered when the child was a minor, or as a modification of any other valid child support order. In this case, where the parties' disabled sons had turned eighteen before the divorce petition was filed, the trial court was without jurisdiction to order Father to pay child support. *See Day*, 1999 WL 269928, at *2 ("[T]he express language of the [applicable divorce statutes] suggests that the divorce court's authority to order child support is limited to cases in which the parties' child or children are under the age of eighteen."). For these reasons, we conclude that section 36-5-101(p)(2)

did not provide authority for the divorce court's award of child support for Michael and Timothy in the instant case.

Of course, the parties can agree to obligate the non-custodial parent to provide support for such a disabled adult child in a marital dissolution agreement or otherwise. "These agreements are enforceable as contractual obligations even after they have been incorporated into a divorce decree." *Sandusky*, 2001 WL 327898, at \*4; *see Penland v. Penland*, 521 S.W.2d 222, at 224-25 (Tenn. 1975) (enforcing provision in the parties' property settlement agreement requiring the father to pay college expenses for adult children); *In re Lovelace (Lovelace v. Lovelace)*, No. M2003-01274-COA-R3-CV, 2004 WL 1459409, at \*3 (Tenn. Ct. App. June 28, 2004) (in a conservatorship case, enforcing the father's obligation to provide child support for his adult disabled son, where the father had agreed to provide such support in the parties' marital dissolution agreement).

In the instant case, the trial court found that the parties agreed on the Parenting Plan in the divorce case and apparently determined that it had the authority to order Mother to pay child support on that basis. The record in this case, however, includes no indication of any agreement between the parties regarding Mother's obligation to provide support. To the contrary, it appears that Father proposed the Parenting Plan, and the divorce court adopted it. Under these circumstances, we find that the Probate Court erred in asserting jurisdiction over the child support issues on the basis of an agreement between the parties.

In summary, in the context of the divorce proceedings, the divorce court was without jurisdiction, either by statute or by agreement of the parties, to enter a child support order for Michael and Timothy. Consequently, any order entered by the divorce court regarding the care and support of Michael and Timothy was "a nullity and is therefore unenforceable." *Day*, 1999 WL 269928, at \*1. We must now consider whether the Probate Court had jurisdiction to approve the provisions in the Parenting Plan in the context of the conservatorship proceedings.

Mother argues that, because the divorce court's order was null and void, then the Probate Court's decision to approve the order was a futile attempt to breathe life into a void order. She claims that there is no authority for a court in conservatorship proceedings to adopt a divorce Parenting Plan as a management plan for adult wards. In response, Father argues, that the cases on which Mother relied in support of her other arguments on appeal – *Kilby*, *Scott*, *Day*, and *Mora* – all indicate that the conservatorship statutes are the appropriate avenue for addressing the needs of an adult disabled child. He notes that under Tennessee Code Annotated §§ 34-1-121 and 34-3-101, courts are given broad discretion to require additional actions in conservatorship cases. Father maintains that these statutes authorized the probate court to enter any such orders that would be necessary for the support of Michael and Timothy in this case.

Father is correct in his assertion that *Kilby*, *Scott*, *Day*, and *Mora* imply that the probate court in a conservatorship proceeding has the authority to require a parent to pay support for an adult disabled child if such support is needed. In *Scott*, the court specifically approved of the trial court's action in adjudicating the conservatorship petition to establish the proper custody arrangement for

-14-

the adult disabled child. ***Scott***, 1999 WL 39506, at *3. In doing so, the court stated that "T.C.A. 34-11-121 conveys plenary powers to the court in conservatorship actions. Moreover, the state has the constitutional power to act for incompetents . . . ." ***Id.*** Section 34-11-121, which is now codified at 34-1-121, provides:

> The court has broad discretion to require additional actions not specified in the provisions of this chapter, and chapters 2 and 3 of this title as the court deems in the best interests of the minor or disabled person and the minor's or disabled person's property. The court also has discretion to waive requirements specified in the provisions of this chapter, and chapters 2 and 3 of this title if the court finds it is in the best interests of the minor or disabled person to waive such requirements, particularly in those instances where strict compliance would be too costly or place an undue burden on the fiduciary or the minor or the disabled person.

Tenn. Code Ann. § 34-1-121(a) (2001). In addition, the courts in ***Kilby***, ***Day***, and ***Mora*** indicated, albeit in dicta, that a conservator in a conservatorship proceeding "would have the authority to seek a decree requiring the parents to contribute" to the support of the adult disabled child. ***Kilby***, 1999 WL 76065, at *6; *see **Mora***, 2001 WL 609567, at *5; ***Day***, 1999 WL 269928, at *5.

Nonetheless, in the case at bar, the Probate Court did not simply order the payment of support for Michael and Timothy pursuant to the conservatorship statutes. While the Probate Court stated that it considered "the rights and privileges of the wards of the conservatorships," it approved the order entered in the divorce court because it deemed the order to have been valid, and it confirmed the Parenting Plan set forth in the order of the divorce court. Since the order of the divorce court was void for lack of subject matter jurisdiction, the order of the probate court denying Mother Rule 60 relief from the order must be reversed. In the context of the conservatorship proceedings, however, the probate court clearly had jurisdiction to consider the substantive issue, namely, the financial support of the parties' two disabled adult sons. Therefore, we remand the cause to the probate court for consideration of the issue of financial support for Michael and Timothy. On remand, the probate court is not precluded from considering the Parenting Plan proposed by Father. However, in the conservatorship proceeding, the trial court is not bound by the child support guidelines in determining the amount of any award that might be necessary. ***See Mingle v. Mingle***, No. 01-A01-9305-CH-00197, 1993 WL 377609, at *3 (Tenn. Ct. App. Sept. 24, 1993) (concluding that the guidelines do not apply to cases "involving a parent's continuing obligation to support a disabled adult child"); *see also **Feinburg v. Diamant***, 389 N.E.2d 998, 1002 (Mass. 1979) (reversing support order for adult disabled child entered in divorce case, but giving the probate court the opportunity to determine whether the order was reasonable in light of all the relevant factors).

Accordingly, we reverse the probate court's decision to confirm the order entered in the divorce proceedings, and remand for reconsideration of the issue of financial support for Timothy and Michael, as well as any other pertinent issues, in the discretion of the probate court.

The decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellee Kevin Thomas Jones, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE