BARRY M. FEINBERG *vs.* MARILYN C. DIAMANT.

Suffolk. April 4, 1979. — May 16, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Probate Court,* Jurisdiction. *Jurisdiction,* Probate Court, Support of incompetent person. *Parent and Child,* Support of incompetent person.

A financially able divorced parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet. [133-134]

Although the Probate Court did not have jurisdiction under G. L. c. 208, § 28, to award support by a divorced parent for a mentally incapacitated adult child, it did have jurisdiction to make such an order pursuant to its general equity power to decide all matters relative to persons placed under guardianship. [135-137]

LIBEL for divorce filed in the Probate Court for the county of Suffolk on September 5, 1957.

A petition, filed on June 5, 1975, to revoke a modification decree was heard by *Fitzpatrick, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Benjamin W. Corey* (*Edward Casey* with him) for the defendant.

*David J. Granovsky* for the plaintiff.

HENNESSEY, C.J. In this case we are asked to decide whether a divorced parent can be compelled to contribute to the support of his mentally incapacitated adult child and, if so, whether the Probate Court has jurisdiction to issue the support order pursuant to G. L. c. 208, § 28.[1] We

---

[1] General Laws c. 208, § 28, provides in pertinent part: "Upon decree of divorce . . . the court may make such decree as it considers expedient relative to the care, custody and maintenance of the *minor* children

conclude that a divorced parent can be so compelled, if he is financially capable of meeting the burden. We also conclude that the Probate Court has jurisdiction to issue the order, however not under G. L. c. 208, § 28, but, rather, pursuant to its general equity powers or powers to decide all matters relative to persons placed under the guardianship of another or others. See *Mitchell* v. *Mitchell*, 312 Mass. 154 (1942); G. L. c. 215, §§ 3, 6.

We summarize the facts briefly as follows. The appellant, Marilyn C. Diamant, and the appellee, Barry M. Feinberg, were divorced in 1958. Diamant was awarded custody of their only child, Mark, and Feinberg was ordered to pay $17.50 a week for Mark's support. In 1961, this amount was increased to $25 a week by order of the court.

Mark is mentally retarded and has been a resident of the Walter E. Fernald State School in Waltham, Massachusetts, since 1968. In 1974, shortly after Mark reached the age of majority (as measured by G. L. c. 4, § 7, which as of January 1, 1974, reduced the age of majority to eighteen), a probate judge modified the support order so as to require that a guardianship be filed on Mark's behalf, that Diamant and Mr. Marc Redlich, an attorney, be named as coguardians, and that Feinberg pay them up to $25 a week for "the various personal expenses" stemming from Mark's residency at the Walter E. Fernald State School.[2]

---

of the parties . . .; and afterward may from time to time . . . revise and alter such decree or make a new decree, as the circumstances of the parents and the benefit of the children may require" (emphasis supplied).

[2] The personal expenses referred to in the order include the costs of clothes, toys and other inducements for learning not covered by the school's limited budget. These costs have been borne solely by Diamant since Mark began his stay at the school. Thus, neither G. L. c. 123, § 32, nor § 37 of that same chapter (both of which describe in what circumstances and from whom the Department of Mental Health may recover expenses for the care of any person within its facilities), is relevant to this case.

On April 16, 1975, Feinberg filed a petition seeking modification of the 1974 order on the ground that Mark's guardians had incurred "excessive and unnecessary expenses" on Mark's behalf. On May 19, 1977, a probate judge suspended the order and on July 26, 1977, revoked the order on the ground that the court lacked jurisdiction to issue it. Diamant appealed to the Appeals Court and we transferred the case here on our own motion. We reverse.[3]

1. It is well settled in this and other jurisdictions that, as a general rule, the common law imposes no obligation on parents to support their adult, emancipated, or married children. See, e.g., *Oliveria* v. *Oliveria*, 305 Mass. 297, 299 (1940); *Napa State Hosp.* v. *Flaherty*, 134 Cal. 315 (1901); *Mercer* v. *Jackson*, 54 Ill. 397 (1870); *McCrady* v. *Pratt*, 138 Mich. 203 (1904). Although this court has never squarely faced the issue, a majority of courts which have considered the issue recognize an exception to the rule, which obtains in cases involving adult children who are mentally or physically incapacitated and incapable of self-support. In such situations the parents' obligation to support the child has been held to continue for as long as the child is incapacitated.[4] In *Crain* v. *Mallone*, 130 Ky.

---

[3] We note that our decision to reverse is not predicated on a finding of error in the judge's actions below. She concluded that the Probate Court lacked jurisdiction under G. L. c. 208, § 28, and was quite correct in reaching that conclusion. The other issues raised in this appeal are ones of first impression in this Commonwealth, and the probate judge had no reason to anticipate our holding.

[4] See, e.g., *Fincham* v. *Levin*, 155 So. 2d 883 (Fla. Dist. Ct. App. 1963); *Maitzen* v. *Maitzen*, 24 Ill. App. 2d 32 (1960); *Strom* v. *Strom*, 13 Ill. App. 2d 354 (1957); *Zakrocki* v. *Zakrocki*, 115 Ind. App. 556 (1945); *Prosser* v. *Prosser*, 159 Kan. 651 (1945); *Crain* v. *Mallone*, 130 Ky. 125 (1908); *Commonwealth ex rel. Groff* v. *Groff*, 173 Pa. Super. Ct. 535 (1953); *Sayne* v. *Sayne*, 284 S.W.2d 309 (Tenn. App. 1955); *Schultz* v. *Western Farm Tractor Co.*, 111 Wash. 351 (1920).

The Legislatures of some States have enacted statutes codifying identical or similar exceptions, thereby obviating the need for courts of those States to decide whether there exists an exception at common law. See, e.g., *Anderson* v. *Anderson*, 124 Cal. 48 (1899); *In re Estate*

125, 129-130 (1908), the Kentucky court stated: "The duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance." We agree with this enlightened statement of the common law rule.

Some courts have held that the child's incapacity must exist at the time he or she reaches the age of majority in order for the duty to exist. See, e.g., *Mt. Pleasant Overseers* v. *Wilcox*, 2 Pa. Dist. Ct. 628 (1893). Other courts have required that the child continue living in the parents' home. See, e.g., *Murrah* v. *Bailes*, 255 Ala. 178 (1951); *Pocialik* v. *Federal Cement Tile Co.*, 121 Ind. App. 11 (1951). We need not now decide whether we will adopt the former position, as it is clear from the record that Mark's incapacity existed at the time of his coming of age. We decline to adopt the latter as a per se rule, because in our view it works an unjustifiable hardship on the children of divorced or separated parents and children who have been institutionalized. Of course, if a child unwarrantedly refuses to live with the parent and such refusal creates extra and unnecessary expenses, that fact might be relevant in assessing the extent of the parent's duty to support. However, that is not the case here. Accordingly, we hold that a financially able divorced parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet.

*of Kasner*, 175 Misc. 832 (N.Y. Sur. Ct. 1941); *Commonwealth ex rel. O'Malley* v. *O'Malley*, 105 Pa. Super. Ct. 232 (1932).

2. General Laws c. 208, § 28, is addressed specifically to the care and maintenance of *minor* children. While some courts have upheld a Probate Court's jurisdiction to order the support of an adult, incapacitated child pursuant to a divorce decree notwithstanding similar statutory language, see, e.g., *Zakrocki* v. *Zakrocki*, 115 Ind. App. 556 (1945), the great majority have held to the contrary, see, e.g., *Perla* v. *Perla*, 58 So. 2d 689 (Fla. 1952); *Baril* v. *Baril*, 354 A.2d 392 (Me. 1976); *Borchert* v. *Borchert*, 185 Md. 586 (1946); *Van Tinker* v. *Van Tinker*, 38 Wash. 2d 390 (1951).

This court has previously stated that "[t]he statutes governing the wife's right to alimony and child support constitute 'a complete statutory system, intended to cover the field of civil liability for maintenance between husband and wife. . . . There is in this Commonwealth no nonstatutory right to sue for alimony or support.' " *Orlandella* v. *Orlandella*, 370 Mass. 225, 227 (1976), quoting from *Gediman* v. *Cameron*, 306 Mass. 138, 140 (1940). It is true that in *Verdone* v. *Verdone*, 346 Mass. 263, 264 (1963), we upheld a modification of a support decree directing, inter alia, the husband to pay "all expenses for all reasonable psychiatric treatment" of his mentally retarded adult son. However, that case came before the court on the wife's appeal, which challenged the amount awarded in other parts of the decree and the judge's refusal to consider the husband's net worth. Neither party raised the jurisdictional issue, and the court did not consider it. As a result, *Verdone* is of no precedential value and we will treat the issue as one of first impression.

We cannot ignore the term "minor" in G. L. c. 208, § 28, or construe it as encompassing an adult, incapacitated child. To do either would contravene the plain meaning of the statute. The appellant argues that G. L. c. 208, § 33,[5] expands the Probate Court's jurisdiction in divorce

[5] General Laws c. 208, § 33, as appearing in St. 1936, c. 221, § 1, provides: "The court may, if the course of proceeding is not specially prescribed, hear and determine all matters coming within the purview

proceedings in such a manner as to empower that court to issue the support order in question pursuant to a divorce decree. We decline to interpret § 33 in the manner the appellant suggests. The statute expands the Probate Court's § 28 jurisdiction, but only to "causes cognizable under the *general principles of equity jurisprudence, arising* between husband and wife." As the common law duty that we recognize today runs directly from the parent to the child, the cause of action falls outside the scope of § 33. Our conclusions in this regard, however, are not fatal to the appellant's basic claim on appeal.

Diamant and Mr. Redlich were appointed as Mark's coguardians in December of 1974, and the modification of support order was issued in contemplation of their appointment. As the Probate Court has jurisdiction over all matters pertaining to guardianships in this Commonwealth, see G. L. c. 215, § 3, that court clearly had the power to issue the order; it simply should not have done so as a corollary to the decree nisi of divorce. Because we think that it would be exalting form over substance to affirm the revocation of the order and require the appellant to institute a separate action with the appropriate claim of jurisdiction, we reverse and remand the case for consideration of the appellee's claim that Mark's guardians incurred excessive and unnecessary expenses. On remand, the appellant's 1974 petition should be deemed amended to make Mark, through his guardians, a party, Mass. R. Civ. P. 15(a), 365 Mass. 761 (1974), and the case should be treated as coming within the Probate Court's general equity powers and powers to decide cases involv-

of this chapter according to the course of proceedings in ecclesiastical courts or in courts of equity, and may issue process of attachment and execution and all other proper and necessary processes. In such proceedings the court shall have jurisdiction in equity of all causes cognizable under the general principles of equity jurisprudence, *arising between husband and wife*, such jurisdiction to be exercised in accordance with the usual course of practice in equity proceedings" (emphasis supplied).

ing the guardianships of incompetents. If the court concludes that the 1974 order was reasonable in light of all the circumstances, including the child's needs and the divorced father's ability to pay, then the order should be reinstated. If the court concludes otherwise, it may take any other action consistent with general equity jurisprudence to assure that the interests of justice are served.

3. The judgment is reversed and the case is remanded to the Probate Court for further proceedings in accordance with this opinion.

*So ordered.*