Doyle, P.J.
This is an action in contract in which the plaintiff-hospital seeks to recover $7,136.46 in medical care and services furnished to defendant Stanley Rumage. The plaintiff further alleges that defendant Benjamin Rumage, Stanleys father, is liable for the amount in question upon an express agreement he made to be financially co-responsible for the hospital expenses incurred by his adult son.
The report and the trial justice’s summary of the evidence, [see Olofson v. Kilgallon, 362 Mass. 803, 805 (1973),] disclose the following: Defendant Stanley Rumage, a thirty-five year old resident of New York City, voluntarily admitted himself to McLean Hospital on April 20, 1982. He was suffering at that time from depression and impaired judgment. Upon his admittance to the hospital, Stanley Rumage signed a Financial Agreement to make payment for all treatment and services he received. Expenses incurred by Stanley Rumage during a prior stay at the plaintiff-hospital had been paid in full by Blue Cross/Blue Shield.
The plaintiffs Patient Account Representative had noted on the hospital records of April 20,1982 that Stanley Rumage was the responsible party for all bills; that he was insured by Blue Cross/Blue Shield and that such benefits were expected to provide full hospital coverage for sixty days; that he was currently unemployed; and that defendant Benjamin Rumage had agreed to be co-responsible for charges not covered by Blue Cross. This last notation was based on atelephone conversation with defendant Benjamin Rumage in which he allegedly agreed to be co-responsible for his adult son’s medical expenses. Neither the date, nor the initiating party, of this alleged telephone conversation are disclosed in the report. There was evidence that the plaintiff relied upon the alleged oral agreement in accepting Stanley Rumage as a patient. With *136 respect to Stanley’s prior hospital admission, there was evidence that Benjamin Rumage had received and cashed a check from the plaintiff which represented a refund of a credit balance in Stanley’s account which was to have been returned to the “financially responsible” party.
Defendant Benjamin Rumage is a resident of Chicago, Illinois. The plaintiff forwarded a Financial Agreement form to Benjamin which he refused to sign or return to the hospital. The defendant visited his son at the hospital on July 20,1982. He informed the plaintiff at that time that he would neither sign a Financial Agreement nor make a commitment to be financially responsible for his son’s bill, but that he “would try to work out a payment plan” for the twenty-percent of the hospital charges not covered by Blue Cross. The plaintiff continued through October, 1982 to bill both Benjamin Rumage and the insurer for Stanley’s hospital expenses. Defendant Benjamin Rumage never acknowledged or paid these bills.
Judgment was entered for the plaintiff against Stanley Rumage only. A finding was entered for defendant Benjamin Rumage. The trial justice made the following subsidiary findings of fact:
[Defendant Stanley Rumage is liable for the cost of medical care furnished to him at McLean Hospital.
[Defendant Benjamin Rumage at no time orally or in writing agreed to be financially responsible for the medical care and treatment provided to his adult son at the McLean Hospital.
The plaintiff thereafter requested a report to his Division, claiming to be aggrieved by: (1) the trial court’s finding that defendant Benjamin Rumage made no oral agreement to be co-responsible for his son’s hospital bills; (2) an alleged inconsistency between this and other findings entered by the trial court; (3) the court’s failure to make a finding of detrimental reliance by the plaintiff on such oral agreement; (4) the court’s failure to rule that the defendant was estopped from disaffirming said oral agreement; and (5) the court’s alleged misapplication of Feinberg v. Diamant, 378 Mass. 131 (1978).
1. The plaintiffs liberal formulation of appellate issues in this case and its creative approach to the preparation of the report now before us mandate the reiteration of some rudimentary tenets for trial and appellate procedure.
Perhaps the most basic axiom governing the scope of appellate review is that a party may not present for the first time on appeal any issue not raised in the trial court. See, e.g., International Fidel, Ins. Co. v. Wilson, 387 Mass. 841 (1983); Stanley v. Ames, 378 Mass. 364 (1979); Drury v. Abdallah, 9 Mass. App. Ct. 865 (1980). The logical corollary of this proposition in adistrict court civil proceeding is that questions of law must be initially raised in the trial court by the submission of Dist./Mun. Cts. R. Civ. P., Rule 64(b) requests for rulings:
There are few propositions of more pervasive precendental impact than the rule which provides that a party may not raise and argue on appeal, as of right, legal issues where no requests for rulings addressing those issues have been filed with the trial court.... [A] trial judge ought to be apprised directly and pointedly of those legal issues which a party is pressing and which if resolved adversely to his position will be argued on appeal. Fairness and orderliness require that such issues be framed and focused precisely for a frequently busy trial judge so that the judge may address them with deliberation as well as dispatch.
*137 Chicoine v. Sonneman, 1982 Mass. App. Div. 256, 257. See also, Reid v. Doherty, 273 Mass. 388, 389 (1930); Murphy v. Hamed, 1985 Mass. App. Div. 30, 31. No request for ruling was submitted by the plaintiff herein raising any issue as to whether or not the evidence would warrant a general finding for the defendant, or would warrant a finding in the defendant’s favor that no oral agreement was made. The plaintiff is thus not entitled to have such issues examined by this Division. Massachusetts Gen. Hosp. v. Quincy, 348 Mass. 791 (1965); New England Copy Specialists, Inc. v. Massachusetts State Pharmac. Assoc., 1983 Mass. App. Div. 139 (1983). Similarly, the plaintiff has waived any issue as to an alleged inconsistency between the trial court’s findings and rulings by failing to bring this issue to the trialjustice’s attention by means of a motion to correct findings or.a motion for a new trial. Raytheon Mfgr. Co. v. Indemnity Ins. Co. of No. America, 333 Mass. 746, 749 (1956); Kelsey v. Hampton Ct. Hotel Co., 327 Mass. 150, 153 (1951). In short, the plaintiff could not effectively create new questions for judicial consideration after a trial decision adverse to its claims by simply listing such questions in the report to this Division.
The plaintiffs unavailing efforts to expand the scope of this appeal also included the novel, and totally improper, approach of re-writing those requests for rulings actually submitted to, and denied by, the trial justice. The report sub judice lists the following as plaintiffs request number 2: “Plaintiff relied to its detriment on defendant Benjamin Rumage’s oral agreement and thus defendant is estopped from disaffirming his agreement.” No such request on the issue of detrimental reliance was ever filed by the plaintiff in the trial court. Two other requests set forth in the report are paraphrasings or reformulations of actual requests submitted by the plaintiff at the end of trial. Rule 64(b) requests are designed to elicit specific legal rulings from a trial justice to demonstrate that the correct principles of law have been employed in arriving at the court’s ultimate finding. See, generally, DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 101 (1975); Kravetz v. Elgin Label Corp., 1982 Mass. App. Div. 168, 168-169. A trial justice must deal with requests in the form presented, and is not required to correct or perfect the same. Butler v. Cromartie, 339 Mass. 4 (1959); Liberatore v. Framingham, 315 Mass. 538 (1944); Aydlett v. Boston, 1982 Mass. App. Div. 37,38. A litigant is certainly not entitled to reshape requested rulings after judgment in order to raise issues never presented to the trial court.
Further, Rule 64(c)(2) of the Dist./Mun. Cts. R. Civ. P. mandates that a report to this Division shall set forth evidence, rulings and all “other facts essential to a full understanding of the questions presented.” An examination of the report sub judice, which was presumably drafted by the plaintiff as aggrieved party, reveals the omission of the first portion of the trial court’s subsidiaryfindings as to Stanley Rumage’s liability and a partial misstatement of the court’s Feinberg v. Diamant ruling (see infra). It was the plaintiffs responsibility, as appellant, to insure that the report contained an accurate and complete recital of all matters pertinent to appellate review, Altshuler v. Field, 336 Mass. 756, 761-762 (1958); Keeney v. Ciborowski, 304 Mass. 371, 374 (1939), including the trialjustice’s factual findings in their entirety and a clear identification of the actual rulings issued by the trial court. Dillon v. Framingham, 288 Mass. 511, 513 (1936). A report is designed to serve as the trial court record. Inaccurate or substantially deficient draft reports may be disallowed at the trial court level.
*138 2. We find no more merit in the plaintiffs substantive arguments than was demonstrated in its preparation of the report sub judice. As the plaintiffs position on this appeal appears to be based on little more than a misunderstanding of the elementary rules of evidence and a partial misstatement of the trial court’s subsidiary rulings, the court’s judgment for the defendant must be affirmed.
The plaintiffs initial, erroneous contention is that the introduction of its business record into evidence pursuant to G. L. c. 233, §78 created prima facie evidence or a “presumption of fact” which entitled the plaintiff to a finding in its favor as a matter of law on the ultimate issue in this case; namely, the defendant’s alleged oral agreement to be financially co-responsible for his son’s hospital bills. The plaintiffs G. L. c. 233, §78 argument betrays a confusion between the principles governing the admissibility, as opposed to the weight to be accorded, certain evidence. General Laws c. 233, §78, which permits business records to be admitted into evidence to prove the truth of the facts contained therein, is nothing more than a statutory exception to the hearsay rule. Neustadt v. Gennelly, 1983 Mass. App. Div. 50, 54 and cases cited. A s. § 78 business record,“is presumed to be reliable and therefore admissible because entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of doing business (emphasis supplied).” Wingate v. Emery Air Freight Corp., 385 Mass. 402, 405 (1982), See also, as to G. L. c. 233, §79, Bouchie v. Murray, 376 Mass. 524, 527-528 (1978). This “presumption of reliability” attending a business record which satisfies the preliminary, §78 statutory criteria for admission signifies only that the record in question has been made and retained in a sufficiently trustworthy and objective manner to override the hearsay character of the record’s contents and to permit the record to be introduced into evidence. Contrary to the plaintiffs contention, this “presumption of reliability” simply renders a business record admissible, but not binding, conclusive or dispositive of any issue, even in the absence of contradictory evidence. No presumptive weight or prima facie status is accorded evidence introduced pursuant to G. L. c. 233, §78; and no artificial legal force attends a business record so admitted. See, for general discussion of legal presumptions and prima facie evidence, Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 786-787 (1982); Commonwealth v. Pauley, 368 Mass. 286, 290-292 (1975); P.J. LIACOS, MASSACHUSETTS EVIDENCE, 48-61 (5th ed. 1981).
The plaintiffs business record containing the notation of an alleged, oral agreement by the defendant to be co-responsible for the hospital expenses of his adult son constituted a modicum of ordinary evidence on this point in the plaintiffs favor. W.W. Britton, Inc. v. S.M. Hill Co., 327 Mass. 335, 33 (1951); Chadwick & Carr Co. v. Smith, 293 Mass. 293, 296 (1936); Friedman v. Kurker, 14 Mass. App. Ct. 152, 156 (1982). Simply stated, the admission of this record into evidence created an inference, Standard Oil Co. of N.Y. v. Malaguti, 269 Mass. 126, 129 (1929), which would have permitted or warranted,but not required,the trial justice to make a finding for the plaintiff. See Household Fuel Corp. v. Hamacher, 331 Mass. 653, 657-658 (1954). In reaching his ultimate conclusion in defendant Benjamin Rumage’s favor, the trial justice was as free to reject the contents of this business record as he would have been to disregard the oral testimony of the maker of this record had such witness been sworn. See Consolidated Rail Corp. v. Arthur A. Silk, Inc., 1982 Mass. App. Div. 151, 161. It is well established that a trial justice may *139 disbelieve even uncontroverted evidence. See, e.g., Piemonte v. New Boston Garden Corp., 377 Mass. 719, 733 (1979), Godfrey v. Caswell, 321 Mass. 161, 162 (1947); Moroni v. Brawders, 317 Mass. 48, 56 (1944). There was thus no error in the trial court’s finding that the defendant made no oral agreement to be financially co-responsible for the hospital expenses of his adult son.
As noted above, the plaintiff has waived any issue as to the general sufficiency of the evidence to support the court’s finding for defendant Benjamin Rumage. The court’s finding that no oral agreement was made rendered immaterial plaintiffs requested rulings 2 and 3 which were predicated on the existence of such agreement. The court’s finding also rendered unnecessary any ruling on issues of estoppel or detrimental reliance.
3. The plaintiffs second contention pertains to the trial court’s consideration of Feinberg v. Diamant, 378 Mass. 131 (1979) herein. On a question of apparent first impression, the Supreme Judicial Court held in Feinberg that a common law duty maybe imposed upon a parent to support an incapacitated, adult child. The trial court rejected the plaintiffs efforts herein to bring this case within the Feinberg rule. The plaintiff has argued that the trial court relied solely upon a misinterpretation oí Feinberg in arriving at its judgment for the defendant. The plaintiffs argument is unpersuasive, as it is clear from the court’s special findings that the basis of its judgment was its subsidiary determination that Benjamin Rumage “at no time orally or in writing agreed to be financially responsible” for his son’s hospital expenses.
The trial court did note that the instant case was factually distinguishable from Feinberg in that the plaintiff herein failed to introduce evidence on any of the following points: (1) that Stanley Rumage’s incapacity existed at the time of his coming of age; (2) that he continued to live in his parents’ home or (3) that he is presently unable to meet the financial obligation to pay that bill which only he agreed to pay. The plaintiff correctly contends that the Supreme Judicial Court rejected the second criterion and reserved opinion on the necessity of the first factor in endeavoring to formulate a common law parental duty to support an incapacitated, adult child.
The trial court’s reference to the first two factors was, however, at most harmless error. See Dist./Mun. Cts. R. Civ. P. Rule 61. No obligation is generally visited on parents to support adult, emancipated or married children. Feinberg v. Diamant, at 133, citing, inter alia, Oliveria v. Oliveria, 305 Mass. 297, 299 (1940). In order to impose a common law obligation on the defendant herein to assume the debts of his adult son, it was incumbent upon the plaintiff to bring this case within the parameters of Feinberg. The trial justice did not, as the plaintiff suggests, require proof on all three factors listed above, but simply noted the absence of evidence on “any” of the criteria discussed in Feinberg which would have rendered that case apposite authority for the plaintiffs claim.
The trial court’s reference to the third factor of Stanley Rumage’s present inability to meet the hospital bills at issue was entirely proper and dispositive of the plaintiffs argument. The Supreme Judicial Court’s holding in Feinberg is that “[a] financially able . .. parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet, (emphasis supplied).” Feinberg v. *140 Diamant, at 134. A parent’s obligation “continues for as long as the child is incapacitated, Feinberg at 133, and thus for that period in which the child is incapable of self-support and unable to satisfy financial obligations. The plaintiff failed to introduce any evidence as to Stanley Rumage’s present or continuing inability to pay for the hospital expenses he incurred. In the absence of such evidence, the plaintiffs reliance on Feinberg was misplaced.
4. There being no error, the report is dismissed.