NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1827                                          Appeals Court

NANCY C. VAIDA  vs.  GEORGE A. VAIDA.


No. 13-P-1827.

Norfolk.      May 7, 2014. – November 6, 2014.

Present:  Cypher, Kafker, & Hanlon, JJ.


Divorce and Separation, Child support, Attorney's fees.  Parent and Child, Child support.  Jurisdiction, Equitable.  Probate Court, General equity power.



Complaint in equity filed in the Norfolk Division of the Probate and Family Court Department on February 16, 2011.

The case was heard by Jennifer M.R. Ulwick, J., on a motion for summary judgment.


David E. Cherny (Laura E. Ruzzo with him) for the plaintiff.
Steven J. Ryan for the defendant.


CYPHER, J.  The plaintiff, Nancy C. Vaida (mother), appeals from an order for summary judgment on her complaint seeking that the defendant, George A. Vaida (father), pay postminority support for his physically disabled son.  We affirm.

1.  <u>Factual and procedural background</u>. The parties were married in 1977, filed for divorce in 1993, and were divorced by a judgment of divorce nisi dated August 22, 1996, as amended September 24, 1996, and further amended December 2, 1996 (judgment of divorce).  There are three children born of the marriage:  Allison, Justin, and Evan.  At the time of the divorce, the children were sixteen, fourteen, and eight years old, respectively.

On April 22, 1995, while the parties were separated and divorce proceedings were pending, the father took Evan and Justin on vacation in Truro.  While they were on vacation, the father took Evan and Justin for a ride on the front bumper of his vehicle.  Evan and Justin fell off the bumper and were accidentally run over by the vehicle driven by the father.  As a result of the accident, Evan became a partial quadriplegic.  He is confined to a wheelchair and paralyzed from the chest down.  Justin was also injured in the accident, but not as severely as Evan.  The father was wholly responsible for the injuries Evan and Justin sustained.

On November 7, 1995, the mother, individually and as a parent and next friend of Evan and Justin, filed a civil lawsuit (civil suit) against the father seeking monetary damages from him for herself, Justin, and Evan.

While the civil suit was pending, the divorce trial took place, and on August 22, 1998, the court entered a judgment of divorce. Pursuant to that judgment, the father and the mother were granted joint legal custody of Allison, who resided primarily with the father. The mother was granted sole legal and physical custody of both Evan and Justin. The divorce judgment also required the father to pay the mother alimony of $5,500 per month until either the father or the mother died or the mother remarried, as well as $5,500 per month in child support for Evan and Justin. The father's child support payments would be reduced by fifty percent after Justin's emancipation, and child support would be terminated after both sons were emancipated. The divorce judgment defined "emancipated" as the earliest of the following:

"a child's attaining age 18 or his graduation from high school, whichever is first except that if a child is enrolled in college as a full-time student, emancipation shall not be deemed to have occurred until the age of 23 so long as the child so remains, so enrolled;

"a child's ceasing to reside primarily with the mother;

"marriage of a child;

"entry by a child into military service of the United States;

"death of a child."

The father was also ordered to maintain and pay for health insurance for the mother and each of the children as well as to

pay for all of the children's reasonable and necessary uninsured expenses.

On February 28, 1997, the mother, individually and as parent and next friend of Justin and Evan, settled the claims against the father for a total sum of $3.5 million, and also entered into a "Settlement Agreement and Release" with the father and his insurers.  The settlement agreement and release contained a "Release and Discharge" provision and a "General Release" provision whereby the mother, on behalf of herself and as parent and next friend of Justin and Evan, released the father from any and all future claims of any kind on account of or growing out of the April 22, 1995, accident.[1]  The release and

_____

[1] The release and discharge provision of the settlement agreement and release stated as follows:

> "1.  Release and Discharge.  In consideration of the payments called for herein, the Plaintiffs completely release and forever discharge the Defendant . . . of and from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract, or other theory of recovery, and whether for compensation or punitive damages, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, an accident alleged to have occurred on or about April 22, 1995 at or near Truro, Massachusetts, which are the subject of the Complaint (and all related pleadings), including, without limitation, any and all known or unknown claims for bodily and personal injuries (including claims for loss of consortium and claims for negligent and/or intentional infliction of emotional distress) to the Plaintiffs, or any future wrongful death claim of Plaintiff's representative,

discharge also explicitly stated that it would not operate as a release on any rights that the mother may have against the father from the divorce judgment. The mother received a lump sum of $225,000 from the settlement. She also received $64,666.84 for the benefit of Justin. For the benefit of Evan, $600,000 was paid into the Evan A. Vaida Irrevocable Trust

which have resulted or may result from the alleged acts or omissions of the Defendant. This release, on the part of the Plaintiffs, shall be a fully binding and complete settlement between the Plaintiffs, the Defendant, and the Insurers . . . . Nothing contained in this Agreement, however, shall constitute or be construed in any way to operate as a release of any and all rights Plaintiffs may have against the Defendant arising out of a Judgment of Divorce entered by the Norfolk Probate and Family Court in the case of Nancy C. Vaida v. George A. Vaida, Docket No. 93D-1621-01, as same exists or as may be amended."

The general release provision of the settlement agreement and release stated as follows:

"7. General Release. The Plaintiffs hereby acknowledge and agree that the Release set forth in paragraph 1 hereof is a general release relating to the alleged negligent acts and omissions of the Defendant as contained in Norfolk Superior Court Civil Action No. 95-02417, and they further expressly waive and assume the risk of any and all claims for damages which exist as of this date but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiffs' decision to enter into, this Settlement Agreement. The Plaintiffs further agree that they have accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact and they assume the risk that the facts or laws may be otherwise than they believe. It is understood and agreed by the Parties that this settlement is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendant, by whom liability is expressly denied. . . ."

(trust).  An annuity was also purchased for Evan's benefit, which made periodic payments into the trust:

"$7,500 payable quarterly for a period of 5 years until January 1, 2002;

"$12,000 payable quarterly for a period of 5 years until January 7, 2007; and

"$7,9[8]0.13 payable monthly for the life of Evan, guaranteed for 30 years, beginning on April 1, 2007, and increasing at a rate of 2% per year."

The remaining funds from the settlement were for the mother's legal fees.

The father and his insurers have made all of the lump sum payments due under the settlement agreement and release, and have purchased an annuity that fulfils their obligation to make periodic payments.  Currently, with the annual two percent increase, the annuity makes monthly payments to the trust of approximately $8,810 per month.  The annuity paid the trust approximately $105,383 in calendar year 2012, and $94,678.11 in 2011.  In 2011, the trust received $143,580.84 from the annuity payments combined with medical reimbursements, insurance refunds, and automobile insurance settlements.  Evan also receives Supplemental Security Income of $552.92 per month, and has been approved for benefits under MassHealth.  As stipulated by the court order, the father maintains medical insurance for Evan to cover medical expenses not paid for by MassHealth.

On February 6, 2011, Evan turned twenty-three years old, at which time he became "emancipated" as per the divorce judgment and G. L. c. 208, § 28.  Evan has significant physical and medical needs as a partial quadriplegic confined to a wheelchair.  However, Evan is not an "incapacitated person" as defined by G. L. c. 190B, § 5-101(9), inserted by St. 2008, c. 521, § 9, and has not been appointed a guardian or conservator.  No other protective order was entered on Evan's behalf pursuant to Article V of the Massachusetts Uniform Probate Code (MUPC), G. L. c. 190B, §§ 1-101 et seq.  Evan recently attended and graduated from Boston College.

On or about February 16, 2011, the mother filed a complaint for modification of the divorce judgment, seeking an increase in the father's alimony obligation.  She also filed a complaint in equity seeking an order requiring the father to pay postminority child support for Evan, maintain Evan's health insurance, and pay all of Evan's uninsured medical expenses.

After the complaint in equity survived a motion to dismiss pursuant to Mass.R.Dom.Rel.P. 12(b)(6) (1975), for failure to state a claim upon which relief can be granted, the judge ordered that Evan be appointed an attorney as independent counsel.  Evan's attorney was instructed to file a motion to have Evan added as a coplaintiff in the complaint in equity if the attorney deemed it appropriate.  No motion was filed to add

Evan as a coplaintiff. The attorney appeared before the court seeking to withdraw because Evan did not lack the capacity to retain counsel of his own choosing. With approval of the court, the attorney withdrew his appearance in this matter.

On or about November 9, 2012, the father filed a motion for summary judgment on the complaint in equity on two grounds:

> "(1) No action based in equity for post-minority support for Evan pursuant to [G. L.] c. 215, § 6, is recognizable under Massachusetts law, absent a finding of incapacity by the court pursuant to [G. L.] c. 190B, § 5-101; and

> "(2) The Settlement Agreement and Release . . . entered into by [the mother] on behalf of herself and as parent and next friend of Evan . . . specifically bars the relief requested by [the mother] in her equity complaint."

The judge allowed the father's motion for summary judgment. From this judgment, the mother appeals, and the father requests an award of attorney's fees and costs in accordance with G. L. c. 208, § 38.

2. Discussion. a. The mother's complaint for postminority support. The mother argues that G. L. c. 208, § 28, does not expressly prohibit an order allowing postminority child support for an emancipated child, and that the court can use its equity jurisdiction under G. L. c. 215, § 6, to allow such an order.

The statutory system governing child support in Massachusetts is a complete system, and there is no nonstatutory right to relief under the common law. Orlandella v. Orlandella,

370 Mass. 225, 227 (1976). Therefore, we must look to G. L. c. 208, § 28, which addresses circumstances under which postminority child support is allowed.[2] In essence, the statute allows for postminority child support up to the age of twenty-three, provided that the conditions outlined in the statute are met. Evan's circumstances met the requirements of the statute and postminority child support was provided for Evan until he reached the age of twenty-three. Since Evan has reached the age of twenty-three, he no longer meets the requirements of the statute to allow for postminority child support, and is, therefore, categorically ineligible for support under G. L. c. 208, § 28.

The mother looks to the equity jurisdiction conferred upon the court under G. L. c. 215, § 6, as the basis for her argument that the court can order postminority support for Evan. Section 6 does allow the court powers of equity jurisdiction in certain circumstances, which are outlined in that statute. There are at

---

[2] "The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance. The court may make appropriate orders of maintenance, support and education for any child who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree." G. L. c. 208, § 28, inserted by St. 1991, c. 173, § 1.

least two cases where the court used this authority to order postminority support. See Feinberg v. Diamant, 378 Mass. 131 (1979); Eccleston v. Bankosky, 438 Mass. 428 (2003). In each of these cases the adult child had been placed under a guardianship as defined by the statute in effect at that time. The statutory scheme prior to 2009, under G. L. c. 201, §§ 6, 6A, and 6B, allowed for the appointment of a guardian for persons who were "mentally ill," "mentally retarded," or "persons unable to make or communicate informed decisions due to physical incapacity or illness" (emphasis supplied). The 2009 adoption of the MUPC replaced the terms "mentally ill," "mentally retarded," and "physical incapacity" with the term "incapacitated person" and provided for a limited guardianship in addition to what has traditionally been a plenary guardianship. The MUPC defines "incapacitated person" as:

> "an individual who for reasons other than advanced age or minority, has a clinically diagnosed condition that results in an inability to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance."

G. L. c. 190B, § 5-101(9), inserted by St. 2008, c. 521, § 9.

In Eccleston, the court allowed postminority support for a child who was under a guardianship because the child was under the age of twenty-three, could not domicile with either of her parents, was not financially independent from her guardian, and

otherwise would have met the requirements for postminority support under G. L. c. 208, § 28, up to age twenty-three. 438 Mass. at 438. In Eccleston, the court used its equity powers to "close an unintended gap in the comprehensive legislative scheme providing postminority support to children of disrupted families that is consistent with the Legislature's directive to construe child support statutes 'liberally' to secure the welfare of children." Id. at 437.

In Feinberg, the court allowed postminority child support for an adult child who had a "mental or physical infirmity," which was at that time in line with the statutory scheme for a guardianship. 378 Mass. at 134. Since this case, the statutory scheme for a guardianship, G. L. c. 190B, § 5-306(b)(6), only allows an appointment of a guardian for those who are "incapacitated persons" as defined by G. L. c. 190B, § 5-101(9), and thus only for people who are unable to "receive and evaluate information or make or communicate decisions."

A third case addresses the necessity for a guardianship before a court could use its equity jurisdiction to order postminority support for an adult child. Saia v. Saia, 58 Mass. App. Ct. 135 (2003). In Saia, the adult child was suffering from "depression and bulimia," but did not meet any of the requirements for postminority support under G. L. c. 208, § 28. Saia v. Saia, supra at 136. The court affirmed the rationale

that postminority support could not be ordered because the adult child did not meet the requirements of G. L. c. 208, § 28, and had not been placed under a guardianship. Saia v. Saia, supra at 138.

The statute conferring equity jurisdiction provides for the court to use its authority in situations like those in Eccleston and Feinberg, where the adult child has been placed under a guardianship. The facts in this case are distinguishable from Eccleston because Evan is not and has not ever been subject to a guardianship and is disqualified from receiving postminority support under G. L. c. 208, § 28, because he is past the age of twenty-three. The facts of this case do not meet the requirements of Feinberg because the current statutory language only allows a guardianship for "incapacitated persons" and Evan does not meet the definition of an incapacitated person. The facts show that Evan is not able to provide for his own physical needs and is physically disabled; however, there are no facts demonstrating that Evan is in any way unable to communicate, or receive and evaluate information to such an extent that he cannot meet essential requirements for physical health, safety, or self-care with appropriate technological assistance. No evidence has been presented that even raises the inference that Evan is unable to receive and evaluate information, or make or communicate decisions for himself, or that he is unable to

support himself financially through his educational accomplishments, the receipt of funds from the trust, and Social Security.

While the court does have equity jurisdiction, it is limited to the provisions outlined in the statute, which do not address situations where the adult child is not an incapacitated person and has not been placed under a guardianship.  "The equity powers conferred by the Legislature on the Probate and Family Court are intended to enable that court to provide remedies to enforce existing obligations; they are not intended to empower the court to create new obligations."  T.F. v. B.L., 442 Mass. 522, 532 (2004).  Evan does not meet the definition of an incapacitated person and cannot be placed under a guardianship for those reasons, and as such does not meet any of the criteria to open the door to the court's use of equity jurisdiction to provide for postminority child support.

The mother also claims that, assuming Evan did need to be placed under a guardianship to be eligible for postminority support, the adoption of the MUPC in 2009 left an unintended gap in the legislative scheme for physically incapacitated persons to be appointed a guardian.  However, review of the pre-2009 statute indicates that the statute allows for the appointment of a guardian in situations where a person, due to physical incapacity, is either unable to make or communicate informed

decisions or properly care for his or her property.[3]  As already discussed, there are no facts to support the idea that Evan is not unable to make or communicate informed decisions or properly care for his own property, given that he is able to financially support himself through the trust funds and Social Security. Under either regulatory scheme, Evan does not meet the requirements for a guardianship.

Plaintiff's last claim is that this action is not barred by the release provision of the settlement agreement and release because it arises out of the divorce judgment.  However, for the reasons described above, there are no remedies available under current law to permit an amendment to the divorce judgment.  The only other avenue under which to pursue relief would be a tort action, which is expressly barred by the release provisions of the settlement agreement and release.  There is no factual dispute to as to the terms of the settlement agreement and release, which is exhaustive and complete.  The mother executed

---

[3] "The probate court may, if it appears necessary or convenient, appoint guardians of minors, mentally ill persons, mentally retarded persons, persons unable to make or communicate informed decisions due to physical incapacity or illness, and spendthrifts and conservators of the property of persons by reason of mental weakness, mental retardation or, physical incapacity unable to properly care for their property, who are inhabitants of or residents in the county or who reside out of the commonwealth and have estate within the county."  G. L. c. 201, § 1 (repealed effective July 1, 2009, by St. 2008, c. 521, § 21).

the settlement agreement and release as parent and next friend of Evan knowingly, voluntarily, and with the advice of counsel. Since there is no cause of action arising out of the divorce judgment and the claim thereby falls outside of the sole exception to the settlement agreement and release, the mother's claim is barred by the settlement agreement and release, and she is precluded from pursuing the requested relief.

b. <u>The father's request for fees</u>. The father requests attorney's fees and costs in accordance with G. L. c. 208, § 38. The matter appears to have been pursued in good faith. The unique facts of this case and the complexity of the issues underlying this matter amply substantiate that this complaint was not a frivolous claim, or a claim brought for the sake of being litigious and dragging a defendant into court. The father's request for fees is denied.

3. <u>Conclusion</u>. Postminority support is not available to adult children who are not incapacitated persons placed under guardianship. The settlement agreement and release bars any other avenues through which the mother may pursue recovery. The father's request for attorney's fees is denied.

<u>Judgment affirmed</u>.