NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

20-P-1321                                          Appeals Court


GEOFFREY G. MERRILL  vs.  SARA S. EWEN.


No. 20-P-1321.

Norfolk.      February 9, 2023. - July 25, 2023.

Present:  Wolohojian, Neyman, & Smyth, JJ.


Real Property, Homestead, Attachment.  Divorce and Separation,
    Child support.  Parent and Child, Child support.  Contempt.
    Practice, Civil, Contempt, Attachment.



    Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on January 21, 1992.

    A motion to vacate an attachment of real estate and rescind
the order, filed on July 17, 2019, was heard by Lee M. Peterson,
J., and a motion for reconsideration was also heard by her.


    Patricia A. DeJuneas for the defendant.
    Daniel P. O'Leary (W. Sanford Durland, III, also present)
for the plaintiff.


    WOLOHOJIAN, J.  The central issue presented is whether an

attachment of real estate issued on a contempt judgment based on

the father's failure to maintain funds in trust for his

disabled, unemancipated daughter qualifies, under G. L. c. 188,

§ 3 (b) (4), as a child support order for a minor child exempt from a homestead estate.  We conclude that the § 3 (b) (4) exemption extends to orders in the nature of support (such as the one in this case), and is not limited only to the more common form of periodic child support payments.  However, because the exemption is available only where the support is for a "minor child," as that term is defined by the Massachusetts Homestead Act, see G. L. c. 188, § 1 (act), it does not apply to the father's obligation here because the unemancipated daughter is an adult.  For this reason, we affirm the judge's determination that the attachment is subordinate to the earlier-filed homestead declaration.  In addition, we remand to permit further proceedings on the question of whether the father satisfied his obligations to maintain a life insurance policy to secure his obligation to the daughter.

Background.  After approximately twenty years of marriage, the parties entered into a separation agreement in 1993 (separation agreement), the terms of which were incorporated into a judgment of divorce nisi.  The provisions relating to the parties' two children, and those relating to alimony, merged into the judgment; the remainder survived as an independent contract.  At the time of divorce, the parties had two minor children:  an eight year old son, and a six year old, disabled, daughter.

Only a few provisions of the separation agreement are pertinent to this appeal. The first required the father to apply the distributions of principal from a trust to the extraordinary educational costs incurred by the parties' disabled daughter. The second required the father to maintain a life insurance policy naming the trustee of the trust as beneficiary so as to meet the father's obligations under the separation agreement in the event of his death. The third required the father to pay monthly child support to the mother until the children were emancipated. Emancipation, as defined by the separation agreement, was to occur when the children (1) attained the age of eighteen or graduated from high school, whichever was later, (2) attained age twenty-three, if enrolled full time in postsecondary school or college, or graduation, whichever was earlier, (3) died or married, (4) established permanent residency away from the residence of the mother, or (5) established full-time employment after age eighteen.

In 2003, the parties reached an agreement to modify certain provisions of the separation agreement, and a modification judgment issued on July 11, 2003 (2003 modification judgment), incorporating the terms to which the parties had agreed.[1] As

---

[1] The parties had previously entered into modification stipulations in 1995 and 2000, the terms of which do not appear in the appellate record, and about which no argument is made.

part of the 2003 modification agreement, the father warranted and represented that the trust funds were invested with three investment firms, and he agreed that he "shall prudently manage" those funds in order to secure the daughter's extraordinary educational expenses (as previously agreed in the separation agreement). The father also agreed to provide the mother with copies of year-end statements of those accounts, and to "continue to maintain $100,000 of life insurance" as required by the separation agreement. In addition, the father was to continue to pay monthly child support for the daughter until she became emancipated as that term was defined in the separation agreement.

The daughter was still a minor at the time of the 2003 modification judgment; she turned eighteen in 2004, and she turned twenty-one in 2007. Nonetheless, to this day, the daughter remains unemancipated due to her disabilities, and she is under the guardianship of her mother.[2]

In 2017, the mother filed a complaint for contempt alleging that the father had failed, among other things, to provide the year-end statements for the trust funds and to maintain the required life insurance. The father was found to be in contempt

---

[2] In 2005, the mother was appointed guardian in Indiana, where she then lived.

and, among other things, was ordered to provide the required trust statements by October 27, 2017, and to provide documentary proof by October 6, 2017, that he had named the trust as the beneficiary of his life insurance policy (2017 contempt judgment). The father was also ordered to pay $6,592.84 for arrearages in child support, uninsured medical expenses, and health insurance, and $2,648 in counsel fees. The father did not comply.

The mother then discovered that the father had depleted the trust funds (amounting to more than $376,000), using the money for his own purposes. The mother accordingly filed another complaint for contempt on January 10, 2018, alleging that the father (1) had failed to pay $11,700 in support payments and other court-ordered payments; (2) had failed to provide all of the year-end statements for the trust; (3) had failed to provide proof that he had changed the beneficiary of his life insurance policy to the trustee of the trust; and (4) had depleted the trust funds, using them for his own personal expenses and the living expenses of the parties' son, even though the daughter remained unemancipated due to her disabilities and would have extraordinary educational expenses in the future (2018 contempt complaint).

Trial on the 2018 contempt complaint was postponed by stipulation of the parties based on the father's agreement that

he would bring himself into compliance with the 2003 modification judgment and the 2017 contempt judgment. The father represented that he would be able to bring himself into compliance with his obligations once he sold his interest in a family property in New Hampshire. When that, too, failed to pass, the 2018 contempt complaint was set for a pretrial conference on June 25, 2018.

Ten days before the pretrial conference, the mother served on the father a motion for an attachment on the father's residence in the amount of $550,000 (the amount depleted from the trust funds, plus $100,000 for the insurance policy, plus unpaid arrearages), alleging that the father had almost $574,000 in equity in the home.[3] Six days later, on June 21, 2018, the father recorded a declaration of homestead, which was designed to shield $500,000 of equity in the home. See G. L. c. 188, § 1. This effectively left only a fraction of the equity in the home available as potential relief on the 2018 contempt complaint or for any attachment.

---

[3] The mother could have filed the attachment motion ex parte so as to avoid giving the father notice of her intent to seek an attachment, which he then would attempt to avoid by encumbering the property otherwise. See Mass. R. Dom. Rel. P. 4.1 (f) (ex parte hearings on property attachments).

The father did not inform the court that he had recorded a homestead declaration.[4]  Nor did the father oppose the attachment motion which, after hearing, the judge allowed in the amount of $550,000, finding that the mother had established a reasonable likelihood that she would recover judgment in an amount equal to or greater than that amount on her 2018 contempt complaint.  A writ of attachment issued on June 25, 2018 (four days after the recording of the homestead declaration), and was recorded one day later, on June 26, 2018.  The father did not pursue an interlocutory appeal of the attachment order.

Approximately two weeks later, on July 10, 2018, after a hearing, the judge found the father to be in contempt for (1) failing to satisfy the arrearages owed to the mother, (2) failing to pay attorney's fees owed to the mother, (3) depleting $365,016 in trust funds that were to have been held for the children's educational expenses; and (4) failing to provide a $100,000 life insurance policy (2018 contempt judgment).  The judge reduced the attachment amount to $465,016, noting that the attachment would be further reduced to $365,016 once the father provided proof of life insurance, and that the attachment would

---

[4] The mother attempts to make much of the fact that the father did not inform her of the homestead declaration.  But the father had no obligation to give her actual notice of the declaration; recording the declaration with the registry of deeds put her on constructive notice.  See Bank of America, N.A. v. Casey, 474 Mass. 556, 560-561 (2016).

be eliminated once the father paid $365,016 back to the account in which it belonged.  The father did not appeal the 2018 contempt judgment or its provisions regarding the attachment.  An amended writ of attachment was recorded on September 7, 2018.

Almost a year later, on July 8, 2019, the mother filed a letter with the register of probate seeking a writ of execution in the amount of $365,016, plus interest and costs, for a total of $430,696.40, which was allowed.  This prompted the father to file a motion to vacate the attachment in which, for the first time, he disclosed to the court the existence of the homestead declaration.  The father argued that the prior recording of the homestead declaration rendered the subsequent attachments invalid.  The father also filed an emergency motion to rescind the writ of execution and to bar or enjoin all efforts to proceed against his real or personal property.  The mother argued that the prior recording of the homestead declaration did not void the attachments and, moreover, that the attachments fell within one of the statutory exemptions to the act.  See G. L. c. 188, § 3 (b).

After a hearing, the judge reduced the writ of attachment from $465,016 to $365,016 on the ground that the father had provided the wife with proof of $100,000 in life insurance.  Although the judge did not void the attachment, she concluded that it did not fall within one of the exceptions to the act

and, thus, that the attachment was subject and subordinate to the amount protected by the act.  The judge rescinded the writ of execution.

The wife then filed a motion for reconsideration on the ground, among others, that the judge had erred in finding that the wife had agreed that the husband had provided sufficient proof of his life insurance.  The wife noted that, although she had agreed the husband had shown proof of insurance, she had not agreed that he had provided proof that the beneficiary of that insurance was the trust.  In response, the judge ordered that the husband provide a copy of the trust document (nota bene, not the life insurance policy), including its schedule of beneficiaries, and allowed the wife to seek a renewed writ of execution.

What is before us now is the mother's appeal from the ruling on the father's motion to vacate the attachment, and the denial of that aspect of her motion for reconsideration regarding the life insurance.[5]  On appeal, the mother argues that (1) the father waived his right to challenge the attachment when he failed to seek an interlocutory appeal from the attachment or to appeal the 2018 contempt judgment; (2) the judge erred in

_____

[5] The father also filed a notice of appeal from the ruling on the motion for reconsideration, but he advances no separate argument concerning it.

concluding that the attachment issued on the 2018 contempt judgment did not fall within an exception to the act; and (3) the judge abused her discretion in reducing the amount of the attachment.  The father maintains that the judge did not err in any respect.

Discussion.  1.  Homestead Act; exception for child support orders.  Reflecting a "public policy that favors preservation of the family home regardless of the householder's financial condition," the Legislature, since the Nineteenth Century, has protected a "family residence from the claims of creditors" up to a certain dollar amount, through the mechanism of the act.  Shamban v. Masidlover, 429 Mass. 50, 53 (1999).  This protection, known as a homestead estate, differs from other types of interests in real property in that it is not "an aliquot part of the land, but measured by value only."  Silloway v. Brown, 12 Allen 30, 36 (1866).  See Doyle v. Coburn, 6 Allen 71, 71 (1863) (homestead estate is "a limited estate").  To obtain a homestead estate to the extent of the declared homestead exemption,[6] one "or more owners who occupy or intend to

---

[6] We deal here only with the declared homestead exemption amount.  There is also an automatic homestead exemption in the amount of $125,000 for homeowners who have not filed a valid homestead declaration, see G. L. c. 188, §§ 1, 4, and a homestead exemption for elderly or disabled persons, see G. L. c. 188, § 2.

occupy the home as a principal residence" must execute and record a written declaration of homestead in accordance with the provisions of § 5 of the act.[7]  G. L. c. 188, § 3 (a).  Once such an estate is created, $500,000 of the equity in the home is shielded "from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies."  G. L. c. 188, § 3 (b).  See G. L. c. 188, § 1 (definition of "declared homestead exemption").

---

[7] There is no allegation that the father's homestead declaration failed to comply with the requirements of G. L. c. 188, § 5.

But this protection is not absolute; there are six exceptions,[8] one of which the mother relies on here.[9]  See G. L. c. 188, § 3 (b); Hartog, Baer & Hand, A.P.C. v. Clarke, 99 Mass. App. Ct. 460, 463 (2021).  Specifically, the mother relies on the exception contained in § 3 (b) (4), which provides that a

---

[8] Section 3(b) provides:

"An estate of homestead shall be exempt from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies except as follows:

"(1) for a sale for federal, state and local taxes, assessments, claims and liens;

"(2) for a lien on the home recorded prior to the creation of the estate of homestead;

"(3) for a mortgage on the home as provided in sections 8 and 9;

"(4) upon an order by a court that a spouse, former spouse or parent shall pay a certain amount weekly or otherwise for the support of a spouse, former spouse or minor children;

"(5) where buildings on land not owned by the owner of the estate of homestead are attached, levied upon or sold for the ground rent of the lot upon which they are situated; and

"(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, duress, undue influence or lack of capacity."

G. L. c. 188, § 3 (b).

[9] In the trial court, the mother also argued that this case fell within the exception contained in § 3 (b) (6), but she does not press that argument on appeal.

homestead estate created under § 3 is not exempt from attachment, seizure, or execution "upon an order by a court that a spouse, former spouse or parent shall pay a certain amount weekly or otherwise for the support of a spouse, former spouse or minor children." G. L. c. 188, § 3 (b) (4). This provision does not limit itself to child support orders entered pursuant to G. L. c. 208, § 28. And we have no difficulty concluding that the statutory language is broad enough to encompass orders in the nature of support, such as the one at issue here, which require a parent to maintain trust funds a disabled, unemancipated child's educational expenses. See Feinberg v. Diamant, 378 Mass. 131, 134 (1979) ("a financially able divorced parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet"). To conclude otherwise would throw the exception into undesirable conflict with the strong public policies favoring enforcement of support orders, preventing support obligors from avoiding their court-ordered obligations, and maintaining dependent children "as completely as possible from the resources of their parents." G. L. c. 208, § 28.

However, the exception extends only to such support orders for children who are minors. A minor child, for purposes of the act, is defined as "a person aged 21 and under, who is the

natural or adopted child of an owner or owner's spouse entitled to the benefits of this chapter."  G. L. c. 188, § 1.  Here, the daughter was under twenty-one when the judgment of divorce nisi entered in 1993, and also when the 2003 modification judgment entered.  Thus, an attachment or execution issued on either of those judgments would have been exempt from a homestead estate created under § 3.  But the attachment instead was based on the 2018 contempt judgment, which entered when the daughter, although still unemancipated due to disability, was no longer a minor child as defined by the act.  Accordingly, although the 2018 contempt judgment constituted an order in the nature of support for a child as contemplated by § 3 (b) (4), it was not such an order for a minor child as defined by the act, and the attachment did not fall within the § 3 (b) (4) exception.[10]

The outcome we reach here, although driven by the plain language of the act, is counterintuitive and, we think, undesirable.  By enacting the exception contained in G. L. c. 188, § 3 (b) (4), the Legislature clearly evinced an intent to prioritize support orders over the homestead estate.  But by limiting the exception to children under the age of twenty-one,

---

[10] The mother has not argued that the arrearage portion of the 2018 contempt judgment constituted an order of support for a minor child because it was based on an earlier support order entered when the daughter was still a minor.  We therefore do not consider this possibility.

rather than extending it to children entitled to support under G. L. c. 208, § 28, and unemancipated adult children entitled to support, it created a distinction at odds with the established, accepted dimensions of child support. See G. L. c. 208, § 28 (support may be ordered for children up to age twenty-three who are domiciled in home of parent and principally dependent upon that parent for maintenance due to enrollment in educational program); Feinberg, 378 Mass. at 134 ("financially able divorced parent may be required to contribute to the support of an adult child who by reason of mental or physical infirmity incurs expenses that he or she is unable to meet"). The arbitrariness of the result is seen in this case, where all of the various judgments stem from the same provision under the separation agreement that the father hold trust funds for the benefit of his disabled daughter. But only those orders that entered while the daughter was twenty-one years old or younger fall within the G. L. c. 188, § 3 (d) (4) exception, while those that entered after the daughter reached age twenty-one -- even though they relate back to the same original obligation and the disabled daughter remains unemancipated -- do not. This result seems especially illogical in light of the fact that the later orders were necessitated by the father's failure to comply with the earlier ones. We doubt the outcome we reach here was intended

by the Legislature, but it is compelled by the Legislature's definition of "minor child" for purposes of the act.

For these reasons, the judge did not err in concluding that the attachment was subordinate and subject to the earlier-recorded homestead declaration.  We note that our ruling does not affect the father's obligations under the various contempt judgments, nor does it in any way confine the judge's equitable powers to enforce those judgments.  "Civil contempt proceedings are 'remedial and coercive,' intended to achieve compliance with the court's orders for the benefit of the complainant" (citation omitted).  Furtado v. Furtado, 380 Mass. 137, 141 (1980).  A judge has broad discretion to fashion remedies in contempt proceedings to prevent threats to the integrity of court orders. See Mills v. Mills, 4 Mass. App. Ct. 273, 278 (1976).  Although we offer no opinion as to what the judge may choose to do to enforce her orders, we note that the available remedies include, upon appropriate factual showings, a period of incarceration[11] and returning the parties to their original positions as though

---

[11] The purpose of civil contempt "is to coerce the performance of a required act by the disobedient party for the benefit of the aggrieved complainant," Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129, 137 (2020), quoting Birchall, petitioner, 454 Mass. 837, 848 (2009), and the judge must determine that the party has the ability to purge himself of the amount.  See Caveney v. Caveney, 81 Mass. App. Ct. 102, 117-118 (2012).

the homestead declaration had not been recorded before the attachment.[12]  "Equity generally regards as done that which ought to be done."  Bakwin v. Mardirosian, 467 Mass. 631, 637 (2014).

2.  Waiver.  The mother argues that the father waived any ability to challenge the attachment by failing to pursue an interlocutory appeal after the 2018 attachment entered and by failing to appeal the 2018 contempt judgment.  A homestead estate pursuant to G. L. c. 188, § 3, is created when a written declaration satisfying § 5 is recorded.  See G. L. c. 188, § 3 ("The estate of homestead shall be created by a written declaration" satisfying the requirements of § 5).  Nothing more is required to trigger the protection of the act.  For this reason, the mother's arguments regarding waiver fail.  The father was not required to challenge or appeal the initial attachment, or the subsequent contempt judgment, to establish

---

[12] The father filed his homestead declaration after he had failed to comply with the 2017 contempt judgment ordering him to restore the missing trust funds, he had been served with the mother's 2018 contempt complaint, he faced imminent hearing on the 2018 contempt complaint, and he had been served with the mother's motion for an attachment.  Facing these circumstances, the father resorted to the mechanism of the homestead declaration in order to attempt to remove $500,000 of equity in his house from the reach of the mother, as well as from the court, as relief for his contempt.  Considered in tandem with his decision not to disclose the homestead estate to the court, these facts might make this case analogous to those involving fraudulent transfers.  In those cases, principles of law and equity allow a judge to return the parties to their respective positions as though the transfer had never occurred.  See Bakwin v. Mardirosian, 467 Mass. 631, 637-638 (2014).

the validity of the homestead estate for the simple reason that the legal effectiveness of the homestead declaration sprang into being on the date the declaration was recorded.  See id.  Cf. Dwyer v. Cempellin, 424 Mass. 26, 28-29 (1996) (validity of homestead declaration to be determined under law in effect on date of recording).

In light of our conclusion regarding the mother's claim of waiver, we need not consider the father's argument that he was entitled to challenge the amount of the attachment at any time pursuant to G. L. c. 223, § 114.  In any event, the father did not raise or rely upon § 114 below and, therefore, the issue was not preserved for appeal.

3.  Reduction in amount of attachment.  The mother argues, and we agree, that the judge erred in reducing the amount of the attachment based on her finding that the parties had agreed that the father had provided proof that the trust was named as a beneficiary of a $100,000 life insurance policy.  In fact, the mother had only agreed that evidence of a life insurance policy had been produced, not that proof of its beneficiary had been produced.  The judge's error was compounded when, on reconsideration, she ordered that the father produce evidence of the identities of the trust's beneficiaries, rather than of the life insurance policy.

On this record, the judge should not have reduced the amount of the attachment by $100,000.  Nor does the appellate record disclose whether the father has complied with his obligation.  Accordingly, a remand is necessary to permit the judge to determine whether, in fact, the father has complied with his obligation to carry a $100,000 life insurance policy securing his obligation to provide for the extraordinary educational expenses of the daughter, and whether he has provided proof of same to the mother.[13]

Conclusion.  We vacate the portion of the August 1, 2019 order amending the amount of the writ of attachment issued on June 25, 2018 and amended on July 20, 2018.  That order is otherwise affirmed.  We also vacate the September 9, 2019 order denying the mother's motion for reconsideration.  The matter is remanded for further proceedings consistent with this opinion.[14]

So ordered.

---

[13] Given that the status of the original trust is unknown on the appellate record, we leave it to the judge to determine on remand whether the manner in which the beneficiary of the life insurance trust is identified satisfies the purpose of the father's obligation.

[14] The father's request for appellate attorney's fees and double costs is denied.